*23
 
 By the Court.
 

 The charge against the defendant is based on Section 13064, Genera] Code, which, in its present form, effective September 21, 1943 (120 Ohio Laws, 664), provides as follows:
 

 “Whoever, for his own profit, establishes, opens, sets on foot, carries on, promotes, makes, draws or acts as ‘backer’ or ‘vendor’ for or on account of a lottery or scheme of chance, by whatever name, style, or title denominated or known, whether located or to be drawn, paid or carried on within or without this state, or by any of such means, sells or exposes for sale anything of value, shall be fined not less than fifty dollars nor more than five hundred dollars and imprisoned not less than ten days nor more than six months. ’ ’
 

 Section 13064, General Code, as theretofore in effect and which was expressly repealed, read as follows:
 

 “Whoever establishes, opens, sets on foot, carries on, promotes, makes, draws or acts as ‘backer’ or ‘vender’ for or on account of or is in any way concerned in a lottery ‘policy,’ or scheme of chance, by whatever name, style, or title denominated or known, whether located or to be drawn, paid or carried on within or without this state, or by any of such means, sells or exposes for sale anything of value, shall be fined not less than fifty dollars nor more than five hundred dollars and imprisoned not less than ten days nor more than ninety days.”
 

 It will be observed that by the amendment, effective September 21,1943, the words,
 
 for Ms own profit,
 
 were added, the word,
 
 policy,
 
 was omitted and the maximum term of imprisonment was increased.
 

 Counsel for the state challenges the constitutionality of Section 13064, General Code, as amended, effective September 21, 1943, and urges that its provisions are in conflict with Section 6 of Article XV of the state Constitution which provides as follows:
 

 
 *24
 
 “Lotteries, and the sale of lottery tickets, for any purpose whatever, shall forever be prohibited in this State.”
 

 Counsel for the state also impeaches the motives of those instrumental in securing as well as those who participated in the enactment of the amended statute and charges that the purpose sought thereby was to effectuate a modification of the positive constitutional provisions prohibiting lotteries and the sale of lottery tickets in this state.
 

 If the existing statute be unconstitutional, the repealing clause thereof is ineffective unless it clearly appears that the General Assembly would have enacted the repealing clause regardless of whether the substituted amendment had been enacted.
 
 (Morton
 
 v.
 
 State,
 
 105 Ohio St., 366, 138 N. E., 45.)
 

 Since concededly under the provisions of the statute in question, as it existed prior to September 21, 1943, the indictment presented would have been sufficient in fonn and substance, the primary and paramount question presented is the constitutionality of the present Section 13064, General Code.
 

 It is a fundamental principle that the determination of the propriety, wisdom, policy or expediency of legislation is not within the judicial function and laws may not be declared invalid by the courts because deemed inexpedient or unwise, nor may laws be thus nullified upon the ground that their enactment was prompted by improper motives.
 

 The duty of courts in such regard is to determine whether the action of the General Assembly is within its constitutional authority, and the court intervenes only when the legislative act is clearly incompatible with some express provision of the Constitution. 8 Ohio Jurisprudence, page 296, and cases there cited.
 

 The original. Constitution of Ohio contained no reference whatever to the subject of lotteries or gambling.
 
 *25
 
 Apparently the first attention given by the General Assembly to the subject was in 1807 (5 Ohio Laws, 91) when it was made an offense to conduct a lottery unless authorized by “special act of the legislature.” Subsequently and for many years the General Assembly expressly authorized lotteries to raise funds for various specified public and private purposes although at the same time prescribing punishment for various other forms of gambling. It was not until 1831 (29 Ohio Laws, 152) that the General Assembly first prohibited a scheme of chance. The inhibition against lotteries and the sale of lottery tickets was made a part of the state Constitution of 1851 and that same provision still remains in effect. Although the constitutional provision prohibits lotteries and the sale of tickets, it is not self-executing in that it prescribes no penalty for its violation.
 

 An examination of various statutory provisions on the subject discloses a general legislative policy to prohibit and declare void all gambling contracts of every description, but only certain of such transactions are made punishable by fine and imprisonment of those who engage therein. There are many and various inhibitory provisions in the state Constitution for the' violations of which no penalties are prescribed; such inhibitory provisions may be implemented only by appropriate action by the General Assembly.
 

 It is well settled that before an act of the General Assembly, providing for the exercise of any plenary power, can be held’to be unconstitutional the prohibition of such exercise must be found in express terms or be clearly inferable from the language of the Constitution. 8 Ohio Jurisprudence, page 251.
 

 Section 13064, General Code, is not in conflict but, so far as it goes, is in harmony with the provisions of the Constitution referred to. It does not authorize
 
 *26
 
 or give validity to any gambling transaction. It does impose a fine and imprisonment upon anyone who, in the capacity stated, engages in any of the transactions enumerated in that section “for his own profit. ’ ’
 

 We are, therefore, in accord with the Court of Common Pleas and the Court of Appeals in holding that Section 13064, G-eneral Code, is not violative of any provision of the state Constitution.
 

 Leave to amend the indictment by inserting the words “for his own profit” was properly refused. Conviction could not be sustained if that element were not proved.
 

 The indictment is insufficient to charge an offense and cannot be cured by amendment since a vital and material element identifying or characterizing the offense is omitted from such indictment.
 
 Breinig v. State,
 
 124 Ohio St., 39, 176 N. E., 674;
 
 Harris
 
 v.
 
 State,
 
 125 Ohio St., 257, 181 N. E., 104.
 

 It follows that the court may not supply words essential to the description of an offense, without which no violation is charged.
 

 The word “unlawfully” used in the indictment states a mere conclusion. It is not synonymous with the words “for his own profit,” and hence does not cure the omission of that element, which is found to be essential to state a violation of Section 13064.
 
 Matthews
 
 v.
 
 State,
 
 4 Ohio St., 539; 21 Ohio Jurisprudence, 780.
 

 The judgment of the Court of Appeals should be, and is, affirmed.
 

 Judgment affirmed.
 

 Turner, Matthias, Hart, Zimmerman, Sohngen and Stewart, JJ., concur.