Matthias, J.
The question presented to this court is whether the Legislature is constitutionally enjoined from making the appropriations, which are the subject of this litigation, for the purpose, as expressed by the legislation, of the rehabilitation of war veterans and the promotion of patriotism, and whether the Court of Appeals erred in rendering judgment in which it “finds that the appropriations in this case are valid.”
The judgment of the Court of Appeals is as follows:
“This cause coming on to be heard on appeal on questions of law and fact, appellees’ motion to dismiss having been withdrawn, and upon the record below as stipulated by the parties hereto in accordance with the stipulation filed herein, the court finds that the appropriations in this case are valid. It further appearing to the court that by such stipulation the parties hereto have agreed that the last quarter-annual installment of the appropriations to the appellant veterans organiza-, tions in issue in this case which would ordinarily be available for payment on April 1, 1955, will not be paid to or received by said veterans organizations until final disposition of this case on appeal to the Supreme Court of Ohio, it is hereby ordered, adjudged and decreed that the petition be and the same is hereby dismissed, the judgment and findings of the Court of Common Pleas be and hereby are held for naught, that the permanent injunction issued by the court below be and the same is hereby dissolved, and the relief prayed for by plaintiff appellee in this case is hereby denied and the judgment herein is hereby entered in favor of defendants appellants. ’ ’
The question of the constitutionality of the enactment by the General Assembly having been raised in the Court of Appeals and the court having held that the legislation providing for the appropriations in this case is valid, the Court of Appeals necessarily determined that such legislation is constitutional.
*146 Section 2, Article IV of the Constitution, entitled “The Supreme Court,” provides certain limitations in determining constitutional questions. Those limitations are as follows:
“No law shall be held unconstitutional and void by the Supreme Court without the concurrence of at least all but one of the judges, except in the affirmance of a judgment of the Court of Appeals declaring a law unconstitutional and void.” (Emphasis added.)
The limitation on this court was discussed as follows by Nichols, C. J., in the case of State, ex rel. Turner, Atty. Genl., v. United States Fidelity & Guaranty Co., 96 Ohio St., 250, 258, 117 N. E., 232:
“In this connection it is proper to observe that under the present Constitution the Supreme Court of Ohio has been clearly and distinctly directed by the people of Ohio that the power to set aside laws passed by the General Assembly, over which the people exercise the veto power through the referendum, is to be exercised with the greatest care. Not only does the long-established rule laid down in Cass v. Dillon, 2 Ohio St., 607, still obtain in all its restrictive effect, but the privilege of exercising the vast responsibility of this power has been hedged about with the most positive and drastic limitations. In Section 2, Article IV of the Constitution, the very section which gives the court its existence, it is provided that ‘no law shall be held unconstitutional and void by the Supreme Court without the concurrence of at least all but one of the judges.’ Much significance is to be attached to the inclusion of this provision in the judicial article. It represents, as is known of all men, a compromise between those of our people who sought to deny to the court the right to exercise the power at all and those who felt that the Supreme Court should be unhampered by any such restriction. Of all the states of the Union the Constitution of ours alone has thus expressly granted this great power to its highest court, and we are reminded that it should be exercised with the greatest possible care and reserve.
“The power was exercised almost from its beginning by the Supreme Court of Ohio, but always, until 1913, by and through a claim of an implied grant of power. A vast amount *147 of discussion, with a display of much learning, has been had in recent years with regard to the exercise of this implied power, both as to the state and federal courts.”
A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality. This court has held enactments of the General Assembly to be constitutional unless such enactments are clearly unconstitutional beyond a reasonable doubt.
Paragraph four of the syllabus in Williams v. Scudder, 102 Ohio St., 305, 131 N. E., 481, states:
“The legislative judgment in this behalf will not be nullified except when it clearly appears that there has been a gross abuse of such discretion in undoubted violation of some state or federal constitutional provision.”
In State, ex rel. Durbin, v. Smith, Secy. of State, 102 Ohio St., 591, 133 N. E., 457, the court, in a per curiam opinion, said:
“In the recent case of City of Xenia v. Schmidt, 101 Ohio St., 437, this court declared: ‘1. A legislative act is presumed in law to be within the constitutional power of the body making it, whether that body be a municipal or a state legislative body. 2. That presumption of validity of such legislative enactment cannot be overcome unless it appear that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution.’ In the opinion by Wanamaker, J., at page 443, the opinion of John Marshall, C. J., in the case of Fletcher v. Peck, 6 Cranch, 87, *' * * is quoted with approval as follows: ‘The question, whether a law be void for its repugnancy to the Constitution, is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative, in a doubtful ease. The court, when impelled by duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligations which that station imposes. But it is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other.’
*148 “And in City of Xenia v. Schmidt, at page 444, Judge Wanamaker again quotes from the opinion of Justice Washington in the case of Ogden v. Saunders, 12 Wheat., 213 (1827), as follows: ‘If I could rest my opinion in favor of the constitutionality of the law * * * on no other ground than this doubt so felt and acknowledged, that alone would, in my estimation, be a satisfactory vindication of it. It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body by which any law is passed, to presume in favor of its validity, until its violation of the Constitution is proved beyond a reasonable doubt. This has always been the language of this court, when that subject has called for its decision * * V
“Quoting again from the opinion of Chief Justice Waite in Sinking Fund Cases, 99 U. S., 700 (1878): ‘Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt. One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule. ’
“Also quoting from the opinion of Chief Justice Shaw in the case of Wellington et al., Petitioners, 16 Pick., 87: ‘To repeat what has been so often suggested by courts of justice, that when called upon to pronounce the invalidity of an act of legislation * * * [they will] never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt.’
“Quoting again from the opinion of Justice Ranney in the case of Cincinnati, Wilmington & Zanesville Rd. Co. v. Clinton County Commissioners, 1 Ohio St., 77, * * * [Wanamaker, J.] approved this language: ‘But while the right and duty of interference in a proper case, are thus undeniably clear, the principles by which a court should be guided, in such an inquiry, are equally clear, both upon principle and authority * * and it is only when manifest assumption of authority, and clear incompatibility between the Constitution and the law appear, that the judicial power can refuse to execute it. Such interference can never be permitted in a doubtful case. * * *’
*149 “This same principle was approved and applied in the recent case of Pohl v. State * * * [102 Ohio St., 474], in which all members of this court concurred. It is there stated that ‘if under any possible state of facts the sections [of the law] would be constitutional, this court is bound to presume that such facts exist.’ ”
Any doubt as to the constitutionality of a statute will be resolved in favor of its validity. State, ex rel. Doerfler, Pros. Atty., v. Price, Atty. Genl., 101 Ohio St., 50, 128 N. E., 173.
Every reasonable presumption will be made in favor of the validity of a statute. State v. Parker, 150 Ohio St., 22, 80 N. E. (2d), 490; State, ex rel. Mack, Judge, v. Guckenberger, Aud., 139 Ohio St., 273, 39 N. E. (2d), 840, 139 A. L. R., 728.
Turner, J., in Wilson v. Kennedy, 151 Ohio St., 485, 492, 86 N. E. (2d), 722, said:
“It is the duty of the court where constitutional questions are raised as here to liberally construe a statute to save it from constitutional infirmities.
“In 8 Ohio Jurisprudence, 160, Section 61, it is said:
“ ‘The presumption in favor of the constitutionality of statutes leads to the conclusion that where the validity of an act is assailed, and there are two possible interpretations, one of which would render it valid, and the other invalid, the court should adopt the former so as to bring the act into harmony with the Constitution.’’
“In 8 Ohio Jurisprudence, 154, Section 58, it is said:
“ ‘It is a well established canon of construction that every reasonable presumption be indulged in favor of the constitutionality of a statute.’ ”
In the instant case, the constitutional question with which the Court of Appeals was necessarily concerned, in making the determination that the legislation passed by the General Assembly involving the appropriations for the named veterans organizations is a valid and constitutional enactment, was the judicial construction of Section 4, Article VIII of the Constitution of Ohio, which reads as follows:
‘ ‘ The credit of the state shall not, in any manner, be given or loaned to, or in aid of, any individual association or corporation whatever * *
*150 In the case of State, ex rel. Leaverton, v. Kerns, Aud., 104 Ohio St., 550, 554, 136 N. E., 217, the same issue was raised as to state aid to another private asssociation, to wit, a county agricultural society. The court said:
“The sections of the Constitution above referred to forbidding financial aid, or the loan of the credit of the state, relate to private business enterprises, and, while they would forbid furnishing financial aid to any agricultural business, an agricultural fair is upon an entirely different basis, being a public institution designed for public instruction, and advancement of learning and the dissemination of useful knowledge.”
A most illuminating statement on the subject of public purpose and the meaning of that term in the law of Ohio is found in the case of Walker, Solr., v. City of Cincinnati, 21 Ohio St., 14, 8 Am. Rep., 24, where Scott, C. J., said:
“On this subject we cannot do better than to adopt what is so well said by Judge Cooley, in his treatise on ‘Constitutional Limitations,’ pages 128,129, where, in speaking of limitations upon legislative authority, he says: * * * But what is for the public good, and what are public purposes, and what does properly constitute a public burden, are questions which the Legislature must decide upon its own judgment, and in respect to which it is vested with a large discretion which cannot be controlled by the courts, except perhaps where its action is clearly evasive, and where, under pretense of a lawful authority, it has assumed to exercise one that is unlawful. Where the power which is exercised is legislative in its character, the courts can enforce only those limitations which the Constitution imposes, and not those implied restrictions, which, resting in theory only, the people have been satisfied to leave to the judgment, patriotism, and sense of justice of their representatives.’ ”
In State, ex rel. Pugh et al., Trustees, v. Sayre, Aud., 90 Ohio St., 215, 107 N. E., 512, the Supreme Court again approved an allocation of public money to a private corporation for disbursement by it. The case arose from an action in mandamus instituted by the Franklin County Law Library Association to compel the county auditor to issue warrants or orders for the payment of certain sums to- the law library association. The as *151 soeiation was a private corporation. The Supreme Court held that the order should issue and that funds arising from fines, etc., should be paid by the county treasurer to said private corporation to maintain the law library which was used by all officers exercising judicial functions in the county.
It has been held on numerous occasions by the courts of this state and by the courts of other states that Section 4, Article VTII of our state Constitution and similar provisions of the Constitutions of other states enjoin the making of appropriations for private enterprises, but that the appropriation of public money to a private corporation to be expended for a public purpose is a valid act of the legislative body.
The ultimate question then is, as was presented to the Court of Appeals, whether the enactment by the General Assembly of Ohio of legislation appropriating funds for the named veterans organizations provides for the expenditure of the funds for a public purpose.
As that court found the legislation to be a valid enactment, the court necessarily answered the question in the affirmative.
The following facts support that conclusion.
In the act passed by the Legislature, known as Amended House Bill No. 10 of the 100th General Assembly, is the following provision:
“The appropriations made in this act to the Department of American Veterans, Disabled American Veterans-Department of Ohio, 37th Division A. E. F. Veterans’ Association, Ohio Bainbow Division, Veterans of Foreign Wars, 83rd Division A. E. F. Veterans Association, American Legion of Ohio and United Spanish War Veterans, are for rehabilitation of war veterans and for the promotion of patriotism. These appropriations are made subject to reports by each of these organisations semiannually to the state controlling board and no release of funds for any six-month period shall be made until the state controlling board has received a report of the expenditures made from these appropriations for the prior six-month period.” (Emphasis added.)
Thus the appropriations bill itself contains the public purpose, for which the appropriations were made to the vet *152 erans associations, in the words, “for the rehabilitation of war veterans and for the promotion of patriotism
Eligibility for membership in the American Legion, Department of American Veterans, Disabled American Veterans and Veterans of Foreign Wars is controlled and prescribed by act of Congress.
Membership in the 37th Division Association, Ohio Bainbow Division and 83rd Division of A. E. P. Veterans Association is confined to those honorably discharged soldiers who served in those Ohio organizations during the wars of our country.
The Veterans Administration, created by act of Congress, has its main office in Washington, D. C., and maintains regional offices throughout the country. It is the duty of this agency of the federal government to make available to handicapped veterans and dependents of veterans the benefits granted to them by congressional enactments. To the states is left the devising of the means of presenting the claims of the veterans of each state to the Veterans Administration.
Section 430, Title 38, U. S. Code, sets up generally the framework and duties of the Veterans Administration. It is in part as follows:
“The Administrator of Veterans’ Affairs shall establish a central office in the. District of Columbia, and such regional offices and suboffices, not exceeding 100 in number, within the territory of the United States * * *. Such regional offices and. suboffices may, subject to final action by the administrator in case of an appeal, and under such rules and regulations as may be prescribed by the administrator, exercise such powers for hearing complaints and for examining, rating, and awarding compensation claims, granting medical, surgical, dental, and hospital care, convalescent care, and necessary and reasonable aftercare, granting vocational training and all other matters delegated to them or some of them, by the administrator as could be performed lawfully under this chapter by the central office. ’ ’
Section 551, Title 38, U. S. Code, in part provides:
“* * no claim agent or attorney except the recognized representatives of the American Bed Cross, the American *153 Legion, the Disabled American Veterans, and Veterans of Foreign Wars, and such other organizations as shall be approved by the Administrator of Veterans’ Affairs shall be recognized in the presentation or adjudication of claims * *
The respondents Department of American Veterans, American Legion, Disabled American Veterans and the United Spanish War Veterans are also accredited to appear and practice before the Veterans Administration in the presentation or adjudication of claims of veterans.
The record in this case indicates that there are 1,200,000 veterans of the wars of our country in Ohio. The veterans organizations provide service officers who are specially trained in rehabilitation service which is made available to all veterans regardless of membership. In addition to obtaining financial compensation for wounded or disabled veterans, the rehabilitation service of these veterans organizations is used to secure benefits for the widows and children of deceased veterans, in the placing of veterans in hospitals, in vocational training, in college training, in outpatient care, etc.
Some states have set up what may be called veterans commissions, and an overall appropriation is made by the state involved to that commission.
The biennial appropriation of California under such a plan was $5,687,000.
Wisconsin with a similar plan had a biennial appropriation of $4,167,200.
The total appropriation under the appropriations bill for the veterans organizations of Ohio is $265,858.
Ohio has no agency except these respondent organizations adequate to provide facilities for the presentation of the claims of Ohio’s veterans to the Veterans Administration. These veterans organizations for over a generation have performed that function for the state, and have been doing largely the same work that costs some other states four or five million dollars, as performed by veterans commissions for a similar public purpose of “rehabilitation of war veterans and for the promotion of patriotism.”
In conclusion, in the words of Chief Justice John Marshall of the United States Supreme Court in Fletcher v. Peck, supra:
*154 “The question, whether a law be void for its repugnancy to the Constitution is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. * * * The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other.” (Emphasis added.)
And in the words of Justice Washington of the United States Supreme Court in Ogden v. Saunders, supra:
“If I could rest my opinion in favor of the constitutionality of the law * * * on no other ground than this doubt so felt and acknowledged, that alone would, in my estimation, be a satisfactory vindication of it. It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body by which any law is passed, to presume in favor of its validity, until its violation of the Constitution is proved beyond a reasonable doubt.” (Emphasis added.)
And in the words of Chief Justice Waite of the United States Supreme Court in Sinking Fund Cases, supra:
“Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt.” (Emphasis added.)
In the present case, the Court of Appeals for Franklin County found that the legislation providing for the appropriations to the named veterans organizations is a valid enactment of the General Assembly of Ohio. The effect of the judgment was to hold the enactment constitutional.
This court, under the limitations imposed by the Constitution where the Court of Appeals has held a statute to be constitutional, cannot find such statute to be unconstitutional if two or more of the judges of this court have doubt as to its unconstitutionality.
Since a majority of the judges of this court have doubt as to the unconstitutionality of the legislation before us for consideration, it must be, and hereby is, held valid.
It follows that the judgment of the Court of Appeals should be, and it hereby is, affirmed.

Judgment affirmed.

*155 Stewart, Bell and Taft, JJ., concur.
Weygandt, C. J., Hart and Griffith, JJ., dissent.
Griffith, J., of the Seventh Appellate District, sitting by designation in the place and stead of Zimmerman, J., pursuant to Section 2, Article IV of the Constitution.