Stewart, J.
The sole question before this court is whether Section 1521.05, Revised Code, is constitutional. This section reads as follows:
“Any person, firm, or corporation which for hire drills, *38 bores, or digs a well shall keep a careful and accurate log of the drilling, boring, or digging of such well. The log shall show:
“(A) The character and depth of the formation passed through or encountered;
“(B) The depth at which water is encountered;
“(C) The static water level of the completed well;
“(D) A copy of the record of pumping tests, if any;
“(E) The construction details including lengths and sizes of casing, screening, and gravel packing.
“A copy of such log shall be furnished to the Division of Water within 30 days after the completion of such well, upon forms prescribed and prepared by the Chief of the Division of Water. Such log shall be kept on file by the division.”
The above section is found in the chapter entitled Division of Water in the Revised Code, in which chapter there is set up within the Department of Natural Resources a Division of Water, consisting of an Ohio Water Resources Board, a Chief of the Division of Water, and such positions as are provided for by written order of the board.
Section 1521.04, Revised Code, prescribes the powers of the Division of Water and provides as follows:
“The Division of Water shall:
“(A) Collect, study, and interpret all available information, statistics, and data pertaining to the supply, use, conservation, and replenishment of the underground and surface waters in the state;
í i * # *
“(D) Assist in an advisory capacity any properly constituted conservancy district, municipal corporation, or other government agency of the state in the planning of works for ground water recharge, or the establishment of water conservation practices, within the limits of the appropriation for such purpose;
“(E) Have authority to furnish information to all public officials, offices, and agencies of and in the state, and to farmers, well drillers, water consumers, industries, and any other persons seeking information regarding water resources;
“(F) Prescribe such rules and regulations subject to and in accordance with Sections 119.01 to 119.13, inclusive, of the *39 Revised Code, for the drilling, operation, maintenance, and abandonment of wells as are deemed necessary by the division to prevent the contamination of the underground waters in the state. * * *
“(G) Have access to all information and statistics which aiiy public authority within the state has available which the division deems pertinent to its duties.”
The Municipal Court held Section 1521.05 unconstitutional for two reasons, (1) that, since the section applies only to drillers for hire, it violates Section 26 of Article II of the Ohio Constitution in that it is not of uniform operation and (2) that, by requiring the furnishing of valuable information without compensation, the statute deprives the well driller of property without compensation therefor and without due process of law in violation of Section 19 of Article I of the Ohio Constitution and the Fourteenth Amendment to the Constitution of the United States.
The contention of the state is that Section 1521.05 is justified as a reasonable exercise of the police power of the state, and that the classification as between well drillers for hire and those not for hire is a reasonable one.
It is axiomatic that, under the constitutional provision that all laws of a general nature shall have uniform operation, there is an inherent power in the Legislature to create classifications of persons, and, if such classifications are reasonable, the constitutional requirement is satisfied. That requirement is that all persons in the group to which the legislation applies shall be treated without discrimination. In other words, it is contended, and we agree with the contention, that there is a great difference between those who dig wells for hire and those who do not. The former group is in a business and naturally has a knowledge and a know-how which is lacking in those who do not dig for hire but work on a do-it-yourself basis. Information from the latter group, such as required by Section 1521.05, would be of little or no value as compared to the information from drillers for hire who are in the drilling business.
We think the classification made by the Genera] Assembly is a reasonable one, and, since the statute applies equally to all drillers for hire, and there is no discrimination as among them, *40 there is no violation of Section 26 of Article II of the Ohio Constitution.
As to the second contention, that the statute violates Section 19 of Article I of the Ohio Constitution and the Fourteenth Amendment to the Constitution of the United States, in that it deprives a person, required to file with the Division of Water a copy of his well-drilling log, of property without compensation and without due process of law for a nonpublie use, we are of the opinion that an analysis of the statute reveals that it reasonably comes within the police power of the state.
We are in thorough accord with the following language in State v. Boone, 84 Ohio St., 346, 95 N. E., 924, 39 L. R. A. (N. S.), 1015:
“The police power is inherent in sovereignty; and its exercise is justified by the necessity of the occasion; Its foundation is the right and duty of the government to provide for the common welfare of the governed. It is tersely expressed in the maxim, isalus populi suprema lex.’ While, therefore, a broad discretion is given to the Legislature to provide for the general welfare, it, necessarily, is not an arbitrary or unlimited discretion; for if it were beyond judicial control or review, it would amount to a practical abrogation of all constitutional guaranties of personal rights and the undefined boundaries of legislative power could be extended so as to authorize the worst and most irresponsible form of despotism, a legislative despotism conducted in the name of the people. Hence it has been held, not only in this state, but in a great number of cases both in the federal and state courts, that it is within the judicial power to declare void an unnecessary or unreasonable exercise of police power. This rule was approved and applied in Phillips v. State, 77 Ohio St., 214, ‘to justify the state in thus interposing its authority in behalf of the public it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The Legislature may not, under guise of protecting, arbitrarily interfere with private business or impose unusual or unnecessary restrictions upon lawful occupations. In other words, its determination of what is a proper exercise of the police power is not *41 final or conclusive, but is subject to the supervision of the courts.’ ”
It cannot be denied that the question of water is of suppreme public interest. The people of Ohio have written into their Constitution Section 36 of Article II, which provides, in part, as follows:
“Laws may also be passed * # * to provide for the conservation of the natural resources of the state * *
Water is a sine qua non of the happiness, health, welfare, and agricultural and industrial progress of the state. Its absence or presence makes the difference between a desert and a garden. It is essential to preserve life of both man and beast, and industrial progress and development depend in a tremendous measure upon an adequate underground water supply.
Ohio is now the second state in the Union in the value of its manufactured products and it has a fiery ambition to become the first. It ranks high among the states in the value of its agricultural products, and, assuredly, water is an essential for prosperous and productive farms. Potable water, free from contamination, is essential to the life and health of all the population. Therefore, it was highly appropriate for this state to create a Division of Water within the Department of Natural Resources and to give that division the power to, among other things, not only prescribe rules and regulations for the drilling, operation, maintenance, and abandonment of wells as are deemed necessary to prevent the contamination of the underground water of the state, but also to furnish information to all public officials, offices and agencies of and in the state and to farmers, well drillers, water consumers, industries and any other persons seeking information regarding water resources.
In order to conserve and assure abundant and adequate supplies of not only surface water but underground water for both agriculture and industry, as well as for the genera] public, it is highly valuable in reference to drilling for water to have information with reference to the character and depth of the formation passed through or encountered by a driller, the depth at which water was encountered, the static or water level of the completed well, the record of pumping tests, and the construction details.
■ In the first place, this information is of incalculable value *42 as showing the location and nature of water supplies, and the construction details constitute valuable information as bearing upon correct methods of drilling for water so as not only to facilitate its location but, likewise, to preserve it from contamination so that it may remain wholesome and potable. If the Division of Water is to prescribe rules and regulations as to the drilling, operation, maintenance, and abandonment of wells so as to prevent the contamination of the underground water of the state,' it must have the information required by Section 1521.05 as a basis for making such rules and regulations intelligent and workable, and although, of course, it may be an imposition upon a well driller to have to keep such a log as is required by Section 1521.05 and to furnish a copy of it to the Division of Water, nevertheless, in the interest of the public welfare it is not so oppressive as to violate constitutional protection.
Frequently the line drawn between an oppressive interference with individual rights and the rights of the public under the police power of government is quite thin. But we must remember that, although the courts should not hesitate to strike down a law which is not reasonably necessary for the accomplishment of a purpose in behalf of the public welfare and is unduly oppressive upon individuals, the courts may not arbitrarily encroach upon the field of a different branch of the government.
We have held many times that a statute enacted by the legislative branch of the government carries a presumption of constitutionality, and that such a presumption must prevail until the constitutional invalidity of the statute appears beyond a doubt. See State v. Parker, 150 Ohio St., 22, 80 N. E. (2d), 490; Wilson v. Kennedy, 151 Ohio St., 485, 86 N. E. (2d), 722; and State, ex rel. Dickman, a Taxpayer, v. Defenbacher, Dir., 164 Ohio St., 142, 128 N. E. (2d), 59.
We are of the opinion that Section 1521.05 does not violate any provision of the state or federal Constitution.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Taft, Matthias, Bell and Herbert, JJ., concur.