Kennedy, J.,
dissenting.
{¶ 73} Respectfully, I dissent. Since 1895, we have held that the Ohio Equal Protection Clause provides the same protection as the federal Equal Protection Clause. See State ex rel. Schwartz v. Ferris, 53 Ohio St. 314, 41 N.E. 579 (1895), paragraph four of the syllabus. Today, the lead opinion, without any analysis of the differences in the text of those provisions or any consideration of the history of the Ohio and federal Equal Protection Clauses, departs from that century-old precedent and declares that the Ohio Equal Protection Clause affords more protection than the Fourteenth Amendment in order to invalidate R.C. 2907.03(A)(13). Because the lead opinion has stretched the precedent of this court and that of the United States Supreme Court to the breaking point, I must dissent.
{¶ 74} Absent a textual or historical analysis that demonstrates that we should depart from our longstanding precedent, there is no reason to do so today. Because the federal and Ohio Equal Protection Clauses afford the same protec *238 tion, and because the statute is rationally related to a valid state interest, R.C. 2907.03(A)(13) is constitutional.
I. Preliminary issues
{¶ 75} I agree with the lead opinion’s recitation of the facts. The lead opinion is also correct that the appropriate standard of review is the “rational-basis test” because R.C. 2907.03(A)(13) does not implicate a suspect class or fundamental right. Arbino v. Johnson & Johnson, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 64. Additionally, the lead opinion correctly reasons that R.C. 2907.03(A)(13) meets the first requirement of rational-basis review because the statute reflects a legitimate state interest in maintaining the public’s confidence in peace officers by ensuring that their integrity is above reproach. Id. at ¶ 66 (statute must be upheld if it is rationally related to a legitimate governmental interest).
{¶ 76} I part with the lead opinion, however, in its declaration that Article I, Section 2 of the Ohio Constitution affords greater protection than the Fourteenth Amendment to the United States Constitution. I further disagree that R.C. 2907.03(A)(13) is facially unconstitutional and that the statute is-not rationally related to a valid state interest.
II. Analysis

A. The Ohio Equal Protection Clause does not afford greater protection than the federal Equal Protection Clause

{¶ 77} The lead opinion declares the statute unconstitutional on the bases of the federal and Ohio Equal Protection Clauses, then concludes that even if it is wrong about the application of the Fourteenth Amendment, the Ohio Constitution’s Equal Protection Clause “independently forbid[s] the disparate treatment of peace officers.” Lead opinion at ¶ 23.
{¶ 78} In support of its decision, the lead opinion relies on Arnold v. Cleveland, 67 Ohio St.3d 35, 42, 616 N.E.2d 163 (1993). Arnold is the first case wherein this court interpreted the Ohio Constitution as providing greater protection than the federal Constitution. However, today’s lead opinion fails to provide any of the careful analysis set forth in the Arnold opinion to justify its conclusion that the Ohio Constitution affords greater protection.
{¶ 79} In Arnold, we examined the right to bear arms in light of Article I, Section 4 of the Ohio Constitution and the Second Amendment. We recognized that the Ohio Constitution contained language that is not included in the federal Constitution. Id. at 43. We noted that the additional language indicated that the people of Ohio chose “to go even further” than the Second Amendment’s focus on the preservation of a militia. Id. In securing to every person an individual right *239 to bear arms, the Ohio provision, unlike the federal provision, “was obviously implemented to allow a person to possess certain firearms for defense of self and property.” Id. Therefore, the Arnold court advanced a rationale for interpreting the Ohio Constitution differently than the federal provision. We then went on to examine the history of the Ohio constitutional provision and the lack of debate that attended both the original version and its 1851 revision, which demonstrated the wide acceptance and uncontroversial nature of the right to possess and use certain arms. Id.
{¶ 80} Arnold serves as the model for the type of the analysis this court should undertake when deciding whether the Ohio Constitution offers greater protection than the federal Constitution. However, this analytical framework is absent from the lead opinion.
{¶ 81} In lieu of a textual or historical analysis, the lead opinion cites five cases as authority for its position that this court “heeded the hortatory call to the new federalism.” Opinion at ¶ 16. I agree that those cases do indeed reflect the new federalism in that they conclude that a provision of the Ohio Constitution can afford greater protection than its federal counterpart. However, three of those cases involved a careful comparison and analysis of the text of the Ohio and federal provisions at issue, such as appeared in Arnold but not in today’s lead opinion. The other two cases cited by the lead opinion, State v. Brown, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, and State v. Farris, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, are highly distinguishable from the case here.
{¶ 82} In the three cases in which we proactively interpreted the Ohio Constitution to provide greater protection than the federal Constitution, or at least reserved the power to do so, we engaged in an Arnold analysis by examining the text and history of the provision before taking the formidable step of declaring that a provision of the Ohio Constitution is more protective.
{¶ 83} In Simmons-Harris v. Goff, we examined the Establishment Clauses in the Ohio and federal Constitutions, and we concluded that the language in the Ohio clause is quite different from the federal. 86 Ohio St.3d 1, 10, 711 N.E.2d 203 (1999). We also observed that while in the past we had discussed the Ohio and federal clauses together, “[t]here is no reason to conclude that the Religion Clauses of the Ohio Constitution are coextensive with those in the United States Constitution * * Id. As a result, we stated that we would not “irreversibly tie ourselves” to the United States Supreme Court’s interpretation of the federal Establishment Clause. Id.
{¶ 84} In Humphrey v. Lane, we concluded that the protection provided by the Ohio Constitution’s Free Exercise Clause goes beyond that provided by the federal Constitution’s Free Exercise Clause. 89 Ohio St.3d 62, 67, 728 N.E.2d *240 1039 (2000). We reached this conclusion because we determined that the phrase “nor shall any interference with the rights of conscience be permitted” is broader than the federal Constitution’s prohibition against laws that prohibit the free exercise of religion. Id.
{¶ 85} Finally in Norwood v. Horney, we compared the Ohio Takings Clause with its federal counterpart. 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115. We held that unlike the federal Constitution as interpreted by the United States Supreme Court, the Ohio Constitution prohibited government appropriation of private property when the sole justification was economic benefit to the community. Norwood at ¶ 75.
{¶ 86} The lead opinion’s reliance on Farris and Browri is also misplaced. These two cases are highly distinguishable from the case at bar because both involved a reaffirmation of our view that the Ohio Constitution provides greater protection even after the United States Supreme Court narrowed the protections of the federal counterpart. Farris, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 48-49, and Brown, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, ¶ 22. The state is not arguing that an intervening case imposing a narrower, more restrictive interpretation of the federal Equal Protection Clause by the United States Supreme Court requires a similar restriction of the Ohio Equal Protection Clause.
{¶ 87} In Farris, we examined the admissibility in a criminal trial of physical evidence seized as a result of unwarned statements. Farris at ¶ 48. While acknowledging that such evidence would be admissible under the Fifth Amendment, id. at ¶ 45, we held that Article I, Section 10 of the Ohio Constitution prohibited its admission. We concluded that the Ohio Constitution was more protective than the Fifth Amendment because “the overall administration of justice in Ohio requires a law-enforcement environment in which evidence is gathered in conjunction with Miranda, not in defiance of it.” Id. at ¶ 49. “[T]o hold otherwise would encourage law-enforcement officers to withhold Miranda warnings and would thus weaken Section 10, Article I of the Ohio Constitution.” Id.
{¶ 88} This holding was in response to the United States Supreme Court’s decision in United States v. Patane, in which the court held that the failure to give Miranda warnings does not require the suppression of physical evidence seized from a suspect as a result of the unwarned voluntary statements. 542 U.S. 630, 631, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004). We decided Farris two years after Patane. We declined to follow the Patane court and declared that the Ohio Constitution provided greater protection to criminal defendants than the Fifth Amendment. Farris at ¶ 48.
*241 {¶ 89} In Brovm, our decision was in response to the United States Supreme Court’s decision in Atwater v. Lago Vista, which held that a warrantless arrest for a misdemeanor did not violate the Fourth Amendment even when the offense did not involve a breach of the peace. 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), and Brown at ¶ 21. The United States Supreme Court concluded that when the Fourth Amendment was framed, the common law permitted warrant-less arrests for similar offenses. Atwater at 326-340. One year prior to the Atwater decision, in State v. Jones, we had examined the same issue, and we held that warrantless arrests for minor misdemeanors, which are crimes that do not involve a breach of the peace, are not permissible under the Ohio and federal Constitutions. 88 Ohio St.3d 430, 727 N.E.2d 886 (2000), syllabus. Two years after Atwater, we decided Brown, and we declined to extend the holding in Atwater to the Ohio Constitution. Brown at ¶ 7.
{¶ 90} Based on our precedent, in order to hold that the Ohio Constitution is more protective than the federal Constitution, the lead opinion needs to point to some language in Article I, Section 2 of the Ohio Constitution that is different from the language of the Fourteenth Amendment. The lead opinion is silent on this point.
{¶ 91} It appears that the lead opinion’s interpretation of Ohio’s Equal Protection Clause is not based on its text or history but on the lead opinion’s sense of judicial necessity. However, our constitutional interpretation should be guided exclusively by the language and history of the clause at issue.
{¶ 92} The lead opinion acknowledges that we have previously held that the federal and Ohio Equal Protection Clauses are to be construed and analyzed identically, citing Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ., 87 Ohio St.3d 55, 60, 717 N.E.2d 286 (1999). However, the lead opinion does not distinguish that case from the present one in any way that would justify its departure from that holding. Instead, the lead opinion merely cites Arnold for the general proposition that “the Ohio Constitution is a document of independent force.” Lead opinion at ¶ 14. That statement is true enough, but hardly sufficient by itself. Moreover, the lead opinion is silent regarding our long line of precedent, beginning in 1895, holding that the protection provided by the Ohio Equal Protection Clause is identical to that provided by the Fourteenth Amendment’s Equal Protection Clause.
{¶ 93} In State ex rel. Schwartz v. Ferris, we announced that the federal Equal Protection Clause was “not broader than the second section of our bill of rights.” 53 Ohio St. at 341, 41 N.E. 579. In 1937, we again said that “the ‘equal protection of the law* provision * * * is substantially the same as the guarantee in that respect contained in the Fourteenth Amendment to the federal Constitution.” (Emphasis added.) State ex rel. Struble v. Davis, 132 Ohio St. 555, 560, 9 N.E.2d 684 (1937). In 1975, we held that “[t]he limitations placed upon governmental *242 action by the Equal Protection Clauses of the Ohio and United States constitutions are essentially identical.” (Emphasis added.) Kinney v. Kaiser Aluminum & Chem. Corp., 41 Ohio St.2d 120, 123, 322 N.E.2d 880 (1975). See also State ex rel. Heller v. Miller, 61 Ohio St.2d 6, 8, 399 N.E.2d 66 (1980) (same). In 1999, we declared that “the Equal Protection Clause of the United States Constitution, contained in the Fourteenth Amendment, and the Equal Protection Clause of the Ohio Constitution, contained in Section 2, Article I, axe functionally equivalent.” (Emphasis added.) Desenco, Inc. v. Akron, 84 Ohio St.3d 535, 544, 706 N.E.2d 323 (1999). As recently as 2010, we reiterated that “[t]he federal and Ohio equal-protection provisions are ‘functionally equivalent.’ ” Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray, 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, at ¶ 17, quoting State v. Williams, 126 Ohio St.3d 65, 2010-Ohio-2453, 930 N.E.2d 770, ¶ 38.
{¶ 94} Although the lead opinion ignores these cases, glaringly absent from the lead opinion is the rigorous three-step analysis required before this court may overturn a prior decision. Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, paragraph one of the syllabus.
{¶ 95} Rejecting 120 years of precedent and without any of the analysis reflected in Arnold, the lead opinion invalidates R.C. 2907.03(A)(13) because it believes that the statute is “arbitrary.” Lead opinion at ¶ 61.

B. R.C. 2907.03(A)(13) is not facially unconstitutional and survives rational-basis review

1. Facial challenges are disfavored

{¶ 96} The lead opinion concludes that R.C. 2907.03(A)(13) is facially unconstitutional. Lead opinion at ¶ 2. The judicial authority to override the legislative will should be used with extreme caution and restraint, because declaring a statute unconstitutional based on a facial challenge is an “exceptional remedy.” Carey v. Wolnitzek, 614 F.3d 189, 201 (6th Cir.2010). “A facial challenge alleges that a statute, ordinance, or administrative rule, on its face and under all circumstances, has no rational relationship to a legitimate governmental purpose.” Wymsylo v. Bartec, Inc., 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 21. This type of challenge is the most difficult to successfully mount because the challenger must establish that no set of circumstances exists under which the act would be valid. Id., citing United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). “The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid.” Harrold v. Collier, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37. “In order for a statute to be facially unconstitutional, it must be unconstitutional in all applications.” Oliver v. Cleveland *243 Indians Baseball Co. Ltd. Partnership, 123 Ohio St.3d 278, 2009-Ohio-5030, 915 N.E.2d 1205, ¶ 13, citing Harrold at ¶ 37, and Salerno at 745. These challenges seek to remove a law from the .books, i.e., to “leave nothing standing.” Warshak v. United States, 532 F.3d 521, 528 (6th Cir.2008).
{¶ 97} Facial challenges are “contrary to the fundamental principle of judicial restraint.” Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 450, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008). A facial challenge forces the court to “ ‘ “anticipate a question of constitutional law in advance of the necessity of deciding it” ’ ” and to “ ‘ “formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.” ’ ” Id. at 450, quoting Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 346-347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), quoting Liverpool, New York & Philadelphia Steamship Co. v. Emigration Commrs., 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885). They raise the risk of a “ ‘premature interpretation] of statutes’ on the basis of factually barebones records.” Sabri v. United States, 541 U.S. 600, 609, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004), quoting United States v. Raines, 362 U.S. 17, 22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). Because of the breadth of the remedy and the loosening of judicial restraint involved in facial constitutional litigation, courts disfavor facial challenges. Washington State Grange at 450. Courts do and should prefer as-applied challenges, which are the “ ‘basic building blocks of constitutional adjudication.’ ” Gonzales v. Carhart, 550 U.S. 124, 168, 127 S.Ct. 1610, 167 L.Ed.2d 480 (2007), quoting Fallon, As-Applied and Facial Challenges and Third-Party Standing, 113 Harv.L.Rev. 1321, 1328 (2000).

2. R.C. 2907.03(A)(13) is rationally related to a valid state interest

{¶ 98} When a statute is challenged as facially unconstitutional and when, as here, the standard of review is the rational-basis standard, the court must conduct a two-step analysis: “We must first identify a valid state interest. Second, we must determine whether the method or means by which the state has chosen to advance that interest is rational.” McCrone v. Bank One Corp., 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 9, citing Buchman v. Wayne Trace Local School Dist. Bd. of Edn., 73 Ohio St.3d 260, 267, 652 N.E.2d 952 (1995); Pickaway Cty. Skilled Gaming, 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, ¶ 19. As to the first step, the lead opinion finds a valid state interest in play but concludes that the second step is not satisfied because the method or means chosen to advance the interest is not rational. I disagree.
{¶ 99} The second step in a rational-basis review requires us to determine whether the law is rationally related to a valid state interest. If a statute is challenged as facially unconstitutional, the challenger must demonstrate that the statute can never be applied in a manner that is rationally related to a valid state *244 interest and show instead that it is “unconstitutional in all applications.” Oliver, 123 Ohio St.3d 278, 2009-Ohio-5030, 915 N.E.2d 1205, ¶ 13, citing Harrold, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, at ¶ 37, and Salerno, 481 U.S. at 745, 107 S.Ct. 2095, 95 L.Ed.2d 697. Those arguing that a statute’s classification violates equal protection have the burden of rebutting every conceivable basis that might support it. Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973). A statute will survive a facial equal-protection challenge when there is a legitimate state interest with a rational basis, that is, when the means and method the state uses to further that interest has some reasonable basis. McCrone at ¶ 8. As we have held:
Legislative enactments that do not involve a suspect classification are “presumptively rationally related to legitimate social and economic goals, unless the ‘varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature’s actions were irrational.’ ”
McCrone at ¶ 30, quoting State ex rel. Doersam v. Indus. Comm., 40 Ohio St.3d 201, 203, 533 N.E.2d 321 (1988), quoting Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).
{¶ 100} There is a “strong presumption of validity” that the United States Supreme Court has repeatedly applied when a statute, challenged as unconstitutional, does not involve fundamental rights or a suspect classification. Fed. Communications Comm. v. Beach Communications, Inc., 508 U.S. 307, 314, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993); Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 462-463, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988); Hodel v. Indiana, 452 U.S. 314, 331-332, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981); Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 314-315, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). While the lead opinion concludes that R.C. 2907.03(A)(13) does not involve a fundamental right or suspect classification, it merely pays lip service to the strong presumption that R.C. 2907.03(A)(13) is constitutional in its rush to invalidate the statute because it believes that it is based on fallacious logic.
{¶ 101} Like the United States Supreme Court, we too have held that it is not within the purview of rational-basis review to decide whether a statute is wise or misguided. We have observed:
The vast weight of authority requires that, when utilizing the “rational basis” test, the courts defer to the legislature on the issue of constitutionality. “We do not inquire whether this statute is wise or desirable * * *. * * * Misguided laws may nonetheless be constitutional.”
*245 Morris v. Savoy, 61 Ohio St.3d 684, 692, 576 N.E.2d 765 (1991), quoting James v. Strange, 407 U.S. 128, 133, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972). We have also observed that “[i]t is a fundamental principle that the determination of the propriety, wisdom, policy or expediency of legislation is not within the judicial function and laws may not be declared invalid by the courts because deemed inexpedient or unwise * * State v. Parker, 150 Ohio St. 22, 24, 80 N.E.2d 490 (1948).
(¶ 102} Additionally, “ ‘courts are compelled under rational-basis review to accept a legislature’s generalizations even when there is an imperfect fit between means and ends.’ ” Pickaway Cty. Skilled Gaming, 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, ¶ 32, quoting Am. Assn. of Univ. Professors, 87 Ohio St.3d at 58, 717 N.E.2d 286. Furthermore, a classification does not fail rational-basis review merely because it is not made with mathematical precision or because it results in some inequality. Id.
{¶ 103} The lead opinion concludes that R.C. 2907.03(A)(13) violates the Equal Protection Clause because the General Assembly’s decision to treat peace officers differently from other people who hold positions of trust based solely on their profession is not logical. The purpose of the Equal Protection Clause is not to allow courts to repeal laws that they believe are illogical. Instead, as the United States Supreme Court has explained, “ ‘ “[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State’s jurisdiction against intentional and arbitrary discrimination * * ’ ” Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), quoting Sioux City Bridge Co. v. Dakota Cty., Nebraska, 260 U.S. 441, 445, 43 S.Ct. 190, 67 L.Ed. 340 (1923), quoting Sunday Lake Iron Co. v. Wakefield, 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154 (1918).
{¶ 104} Criminalizing sexual conduct between a peace officer and a minor is rationally related to a legitimate state interest because it punishes peace officers for conduct that if discovered would diminish them in the eyes of the community. If a peace officer discovered after the fact that the person with whom he engaged in sexual conduct was a minor, he would have a strong incentive to do whatever is necessary to ensure that his employer never found out, even to the point of compromising his integrity. Moreover, there is the potential for blackmail, which could lead to corrupt behavior or worse. These considerations demonstrate how the statute is rationally related to a legitimate government interest of protecting the public trust in peace officers by criminalizing conduct that is not only immoral but is fraught with the potential for corruption and exploitation.
{¶ 105} The lead opinion’s argument at its core is simply that the statute is arbitrary because peace officers are held criminally liable for engaging in sexual *246 conduct with minors when that conduct is not connected with their status as peace officers. However, the proper analysis for a facial challenge of a statute using the rational-basis standard of review is not whether the statute is unconstitutional in the challenged circumstance but whether the statute can ever be applied in a constitutional manner. See Oliver, 123 Ohio St.3d 278, 2009-Ohio-5030, 915 N.E.2d 1205, at ¶ 13. The lead opinion’s analysis must support the conclusion that the statute is “unconstitutional in all applications,” id., and it must “rebut every conceivable basis which might support it,” Lehnhausen, 410 U.S. at 364, 93 S.Ct. 1001, 35 L.Ed.2d 351.
{¶ 106} Instead, the lead opinion focuses its analysis on why the statute is unconstitutional when applied to appellee and his circumstances. However, the lead opinion does not rebut the application of the statute to peace officers who do have some professional connection to the victim or to peace officers who meet a minor in the course of their duties as a peace officer after engaging in sexual conduct with the minor. The lead opinion merely states that the state is not required to prove a professional connection between the peace officer and victim because it is not an element of the offense.
{¶ 107} This reasoning fails because it shifts the burden of proving that the statute is unconstitutional in all circumstances from the party challenging the statute to the state. “[T]he challenger must establish that there exists no set of circumstances under which the statute would be valid.” Harrold, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37. Appellee chose to mount a facial attack on the statute, so he must show that all applications of the statute bear no rational relation to any valid state interest. It is not the state’s burden to introduce evidence to prove constitutionality.
{¶ 108} The lead opinion admits that the statute would be constitutional if the General Assembly had included a nexus between the peace officer’s professional status and the minor with whom he engages in sexual conduct. However, the statute criminalizes this category of conduct between peace officers and minors as part of its broad prohibition against sexual conduct between peace officers and minors. The lead opinion admits that the statute would achieve its legitimate state interest by a rational means and method if applied to a peace officer who uses his professional status to initiate sexual conduct with a minor. Under the lead opinion’s own reasoning, the statute is not “unconstitutional in all applications.” Oliver, 123 Ohio St.3d 278, 2009-Ohio-5030, 915 N.E.2d 1205, at ¶ 13. Therefore, the statute cannot be facially unconstitutional because it can be constitutionally applied in some instances. Id.
III. Conclusion
{¶ 109} Since 1895, we have held that the Ohio Equal Protection Clause provides the same protection as the federal Equal Protection Clause. Absent a *247 textual or historical analysis supporting a departure from that precedent, there is no reason to do so today. Because the federal and Ohio Constitution Equal Protection Clauses afford the same protection and R.C. 2907.03(A)(13) does not target a fundamental right or suspect class, our analysis is limited to a rational-basis review. Because the statute involves a valid state interest and the statute is rationally related to that valid state interest, I would find that R.C. 2907.03(A)(13) is constitutional. Therefore, I dissent.
O’Donnell, J., concurs in the foregoing opinion.