Richard ROE, an infant, by Robert Roe, his parent, et al., Plaintiffs,
and
George Patient et al., Intervenors,

v.

Hollis S. INGRAHAM, as Commissioner of Health of the State of New York, Defendant.

No. 73 Civ. 1303.

United States District Court,
S. D. New York.

April 10, 1973.

Shea, Gould, Climenko & Kramer, New York City, for plaintiffs; Michael Lesch, Solomon Z. Ferziger and Barry Mendelson, New York City, of counsel.

Norwick, Raggio & Jaffe, New York City, for intervenors; H. Miles Jaffe, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., New York State, for defendant; A. Seth Greenwald, Asst. Atty. Gen., of counsel.

ROBERT L. CARTER, District Judge:

## OPINION

The plaintiffs have made a narrow attack upon the comprehensive New York Controlled Substances Act, N.Y. Public Health Law § 3300 et seq. (McKinney's Consol. Laws, c. 45 Supp.1972), which attempts to regulate virtually all facets of the use and distribution of drugs in this state for which a prescription is required. The plaintiffs object only to those sections, specifically §§ 3331(6),[1] 3332(1), (2)(a),[2] 3333(1), (4),[3] 3338

---

[1] "§ 3331 Scheduled substances administering and dispensing by practitioners.

\*   \*   \*   \*   \*

6. A practitioner dispensing a substance which may be prescribed only upon an official New York state prescription must at the time of such dispensing prepare an official New York prescription in the manner set forth in subdivision two of section thirty-three hundred thirty-two of this article. The practitioner shall retain the original for a period of five years and shall file the two copies with the department by not later than the fifteenth day of the next month following the month in which the substance was delivered. . . ."

[2] "§ 3332 Making of official New York state prescriptions for scheduled substances.

1. No substance for which an official New York state prescription is required may be prescribed by a practitioner except on an official New York state prescription, and in good faith and in the course of his professional practice only.

2. Such prescription shall be prepared in triplicate, written with ink, indelible pencil or, apart from the practitioner's signature, typewriter. The original and both copies must contain the following:

(a) the name, address, and age of the ultimate user for whom the substance is intended. . . ."

[3] "§ 3333 Dispensing upon official New York state prescription.

1. A licensed pharmacist may, in good faith, and in the course of his professional practice, sell and dispense to an ultimate user controlled substances for which an official New York state prescription is required only upon the delivery to such pharmacist, within thirty days of the date such prescription was signed by an authorized practition-

(2),[4] which, in combination, require physicians and pharmacists to file with the state copies of prescriptions for certain drugs which are described in detail in the statute under the heading of "Schedule II" drugs, § 3306. Concededly, although the statute does not require it, the state will enter the information it receives, including the name of the patient for whom the drug is prescribed, into a computer file. It is this mechanized collation of data, pursuant to which the state will have on file the names and addresses of patients who are users of prescribed drugs, that constitutes the gravaman of plaintiffs' complaint.

On March 29, 1973 the plaintiffs[5] petitioned this court for an order to show cause on a motion to convene a three judge court pursuant to 28 U.S.C. §§ 2281, 2284 on the ground that plaintiffs sought preliminary and permanent injunctions restraining the implementation of certain sections of the New York Controlled Substances Act (which was to become effective on April 1, 1973), which were allegedly constitutionally infirm. The plaintiffs further sought a temporary restraining order which would stay the implementation of the Act pending determination of the merits. The court heard all counsel and

signed the order[6] setting oral argument for Friday, April 6, 1973.

Plaintiffs make a two pronged attack on the legislation. First, it is argued that the statute is an unconstitutional invasion of the patient's right to privacy, and second, that the statute creates classifications which do not comport with the dictates of the equal protection clause.

I consider first the equal protection argument. The law in this complex area is currently in a state of flux, see, e. g., Gunther, The Supreme Court 1971 Term Foreword: In Search of Evolving Doctrine on a Changing Court, 86 Harv.L.R. 1 (1972), as evidenced by such cases as James v. Strange, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972); Weber v. Aetna Casualty and Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); and Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

The Court of Appeals in this Circuit has recently characterized the appropriate test as "whether the legislative classification is *in fact* substantially related to the object of the statute." Boraas v.

---

er, of the original and one copy of such official New York state prescription.

\* \* \* \* \*

4. The endorsed original prescription shall be retained by the proprietor of the pharmacy for a period of five years. The endorsed copy of such prescription shall be filed with the department by not later than the fifteenth day of the next month following the month in which the substance was delivered."

4. "§ 3338 official New York state prescription forms.

\* \* \* \* \*

2. Except as expressly authorized by section thirty-three hundred thirty-four, substances listed in schedule II may be prescribed or dispensed only upon an official New York state prescription. . . ."

5. Counsel for plaintiffs George Patient, et al., petitioned this court on April 3, 1973 to intervene in the principle action. There being no objection by counsel in the *Roe* action, the motion was granted on April 6, 1973 and reference to "plaintiffs" hereinafter includes the intervenors.

6. The temporary restraining order did not enjoin the implementation of the entire act. Rather it ordered, in substance, that the defendant was restrained from:
 1. filing or processing prescription forms identifying the patients receiving Schedule II drugs;
 2. requiring physicians or pharmacists from filing prescription forms identifying the patients receiving Schedule II drugs;
and ordered that the defendant retain in a secure place any prescription forms received during the pendency of the temporary restraining order.

The Village of Belle Terre (2d Cir. 1973), 476 F.2d 806 at 814.

Applying this test I find no constitutional infringement that can be said to pose a substantial federal question. It is of course true, that patients legitimately receiving Schedule II drugs are treated differently than those who are either receiving Schedule III, IV or V drugs, those receiving no drugs at all, or those who are classified as addicts. But this is only improper if the treatment afforded Schedule II users does not substantially further the ends of the statute.

It is rarely easy to pinpoint with precision a statute's "purposes." Here the goal is obviously at least in part to control certain illegal drug uses by doctors, pharmacists and patients. The plaintiffs intimate that the more lenient reporting standards required of Schedules III, IV and V users make the statute underinclusive and therefore void. This conclusion however results from a misstatement of purpose rather than a defect in the statute. As explained in the Memorandum of Assemblyman Chester Hardt, Chairman of the Temporary State Commission to Evaluate the Drug Laws, the state, by choosing to rely on voluntary and virtually unreviewed compliance with the law as it pertains to the less dangerous drugs of Schedules III, IV and V, sought not only to control drugs effectively but also to limit the intrusion into personal affairs. Thus restricting the new reporting requirements to Schedule II users in fact was consonant with the legislative goals.

The plaintiffs also contend that the statute, by imposing stricter confidentiality requirements to an addict's records [7] than it does to the records of a Schedule II drug user,[8] is irrational and unconstitutional. The Controlled Substances Act deals at some length with distributions of drugs to addicts, Title V, §§ 3350–3356, and attempts to make provision for the effective treatment and rehabilitation of addicts in "maintenance programs." It is well known that addicts have generally been quite reluctant to participate in drug programs. One can well assume that active police surveillance of these programs would generate additional hostility among the addict population. The legislature, recognizing that addicts would be particularly reluctant to join treatment programs if their records were available to the police, imposed especially rigid con-

7. "§ 3356 Central registry confidentiality.
    1. The department shall establish a central registry as part of which the following information shall be assembled:
    (a) the name and other identifying data relating to each reported addict;
    (b) the status of each addict awaiting admission to an approved program or programs;
    (c) the status of each addict in an approved program.
    2. Identifying data in such registry with respect to an individual addict shall be available only to a practitioner attempting to ascertain the status of an addict seeking treatment with him or admission to a program with which he is associated."

8. "§ 3371 Confidentiality of certain records, reports, and information.
    1. No person, who has knowledge by virtue of his office of the identity of a particular patient or research subject, a manufacturing process, a trade secret or a formula shall disclose such knowledge, or any report or record thereof, except:
    (a) to another person who by virtue of his office is entitled to obtain such information; or
    (b) pursuant to judicial subpoena or court order in a criminal investigation or proceeding; or
    (c) to an agency, department of government, or official board authorized to regulate, license or otherwise supervise a person who is authorized by this article to deal in controlled substances, or in the course of any investigation or proceeding by or before such agency, department or board.
    2. In the course of any proceeding where such information is disclosed, except when necessary to effectuate the right of a party to the proceeding, the court or presiding officer shall take such action as is necessary to insure that such information, or record or report of such information is not made public."

fidentiality standards for addicts' files. It is evident, therefore, that § 3356 rationally promotes a valid and legitimate state interest and that the differing treatment afforded Schedule II users and addicts does no violence to any strictures imposed by the equal protection clause.

The only remaining question is whether the system devised does in fact further the objectives of the statute. The conclusion that it does seems unavoidable. Through the use of this system the state will more effectively be able to investigate and control such drug related abuses as forgeries, prescriptions to fictitious persons, patients receiving dangerous drugs from a number of different doctors, and similar activity. Based upon the evidence presented to me, especially the affidavit of Dr. Robert Whalen, Second Deputy Commissioner of the New York State Department of Health and the Interim Report of the Temporary State Commission to Evaluate the Drug Laws, I can only conclude that the system of reporting required by the statute directly and substantially effectuates the state's legitimate interests as expressed by the Act.

The right to privacy, to which I now direct my attention, is more difficult primarily because the issue has only recently clearly emerged as a basic constitutional consideration. It is not necessary here to expound upon the historical antecedents and the current flowering of that right. We are all aware of course that Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) solidified privacy's constitutional status and that since that decision numerous extensions of its essence have occurred. See, *e. g.*, United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) and, to some extent, the recent decisions of Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Doe v.

Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).

The case at bar, however, is significantly distinguishable from each of those cases and from any case cited to the court by counsel. The fundamental thrust of this lawsuit might be made clearer by briefly discussing what is *not* involved here.

First, this is not a case where the state has launched a broad scale invasion into the doctor-patient relationship requiring the publication of the entire medical history and treatment record. Indeed, contrary to plaintiffs' suggestion, even the illness for which a Schedule II drug is prescribed need not be revealed.

Second, the statute *on its face* does not permit unrestricted divulgence of even the limited information collected. In fact § 3371 confines disclosure to the extent consistent with the purposes of the Act. I have also been presented with the memorandum of Assemblyman Hardt and the affidavit of Commissioner Whalen, both of whom appear to be taking all necessary steps to maintain the security of the computerized information.

Finally, this is not a case where the plaintiffs have been able to prove actual abuse of the reporting and computerizing process and consequently to argue facial unconstitutionality based upon pragmatic or historical evidence; that is that such process necessarily and inevitably results in abuse.

In order to further appreciate the essence of plaintiffs' privacy argument, it is necessary to consider the status of the law prior to April 1, 1973. Insofar as the issues involved in this lawsuit are concerned, the only effective distinction is that the new statute requires sending a copy of each prescription for Schedule II drugs to Albany to be computerized. Previously prescriptions required the name of the patient, N.Y. Public Health Law § 3301(32) (McKinney 1971) (repealed 1973), the pharmacist was re-

quired to keep a copy of the prescription, *Id.* at § 3322, and law enforcement officials had complete access to the druggists prescription files, *Id.* at §§ 3322(1)(c), 3334. In short, the state had the power to learn all that it may now require to be revealed. The only difference is that now the state has developed the means to make effective use of that basic power which remains unchallenged.

I must confess, however, that plaintiffs' claims fall upon sympathetic ears. I share with the plaintiffs a deep concern about the ultimate consequences of overzealous data collection and instant data retrieval. I recognize the dangers in a society which permits the government to know the intimacies of its citizens' lives and especially the consequences to those people against whom such information is maliciously or malevolently used. And I realize the potential for individual harm consequent upon errors of fact becoming imprinted upon unforgiving tapes.

Yet computers, computer banks—the new technology—are facts of present day life. Courts can be no more effective than Canute in turning back the tide. It cannot be contended, at least not seriously, that governmental use of this new technology is constitutionally impermissible. And that is the fundamental and basic question which is being raised.

It may well be that courts will be required to establish guidelines and set standards but that is not this case. I do not believe that the United States Constitution proscribes state use of computer lists which contain the names of patients as is provided for under this statute.

The motions for preliminary and permanent injunctions are denied and the temporary restraining order is dissolved. The complaints are dismissed for want of a substantial federal question.

So ordered.