Della Jean **HOUSTON**, by her Mother and Next Friend, Mabel Copelin, Individually and in Behalf of All Others Similarly Situated, Plaintiff,

v.

**S. M. PROSSER**, In his Capacity as Principal, Decatur High School, et al., Defendants.

Civ. A. No. 17132.

United States District Court,
N. D. Georgia,
Atlanta Division.

June 7, 1973.

Thomas A. Bowman and David A. Webster, Atlanta Legal Aid Society, Atlanta, Ga., for plaintiff.

William E. Zachery, Sr., Zachery & Seagraves, Decatur, Ga., for defendants.

## ORDER OF COURT

MOYE, District Judge.

On November 20, 1972, the Court, pursuant to Fed.R.Civ.P. 65(b) and with consent of counsel for both parties, ordered the trial of the action on the merits to be advanced and consolidated with the hearing of the application for a preliminary injunction. The trial was held forthwith and at the conclusion thereof, the parties were afforded an opportunity to submit further briefs. The parties have filed supplementary briefs and plaintiff has moved for leave to amend her complaint.

The salient facts elicited from the record are as follows: On January 20, 1972, this Court held that defendants' practice or policy of denying a pregnant school girl readmission to school as a regular daytime student solely on account of her sex or motherhood to be a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and thereby illegal. Farley v. Reinhart, Civil Action No. 15569 (N.D.Ga.1972). The defendants in that case were the Decatur School Board, its named members and school officials.[1] The defendants in that case had acted pursuant to a regulation which excluded pregnant school girls from attending daytime classes. Subsequent to this Court's order, the School Board, on November 9, 1971, changed its prior policy and substituted the following:

" . . . c. Any person who marries or is found to have become a parent during the course of his or her public education in the City of Decatur shall not be permitted to continue his or her education in said Decatur School System as a regular daytime student. The determination of parenthood or expected parenthood of any male student may be made by obtaining the admission of such fact by the student or by legal actions in the form of pa-

---

1. The same defendants or their privies are present in the instant case.

ternity suits if such admissions are not forthcoming.

"Students coming within the scope of this rule shall be entitled to participate in a fully accredited educational program to be taught at night. Said program shall meet all basic requirements of the State Board of Education and shall be taught by instructors certified to teach pursuant to the requirements established by the State of Georgia, and any scholastic achievements or degrees shall be awarded on the same basis and have the same status of any like achievements or degrees awarded to daytime students . . . ."

The "new policy" was distributed to all school personnel by the School Superintendent on November 10, 1971, and was placed in their "policy books."

In January 1972 plaintiff, an unmarried 15-year-old resident of Decatur, Georgia, absented herself from attendance in the ninth grade of Decatur High School because she was pregnant. Plaintiff gave birth to a child on June 7, 1972. On August 25, 28 and 29, 1972, plaintiff attempted to determine her status in an effort to return to the ninth grade at Decatur High School. Plaintiff was informed on August 28, 1972, that it was the policy of Decatur High School to refuse readmission to parents. Plaintiff was excluded from regular daytime classes in the ninth grade at Decatur High School solely because she was a parent, being eligible for attendance in all other respects. Plaintiff was offered the opportunity to attend night school. However, because she could not afford the tuition nor the cost of the textbooks, she was unable to attend.[2]

## PROCEDURAL ISSUES

■ Plaintiff has failed to establish in this action the presence of a class which is so numerous that it meets the requisites of Fed.R.Civ.P. 23(a). There is no evidence that there is a sufficient number of students who have married or have become parents in the Decatur area that wish to seek admission to the Decatur High School. Defendants' answer shows in Paragraph 3, Count I, that there has been only one other application from a parent to resume his full time attendance at Decatur High School. Therefore, plaintiff has failed to carry her burden of proof that this is a proper class action and the case fails as such. The cause will be considered on the basis of the plaintiff's individual complaint only.

## THE MERITS

■■ The issue before the Court is whether defendants' policy violates the equal protection and due process clauses of the Fourteenth Amendment. Any state policy, rule or statute creating a classification which is attacked as violating the equal protection clause must be examined against either of two constitutional tests: (1) that the classification is rationally related to a legitimate state end; *see* James v. Strange, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972); Eisenstadt v. Baird, 405 U.S. 438, 446–447, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); or (2) that the classification is justified by a compelling state interest. *See* Dunn v. Blumstein, 405 U.S. 330, 337, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The "compelling state interest test" is applied where there has been an impingement of a "fundamental interest" by the rule, policy or statute, Dunn v. Blumstein, 405 U.S. 330, 337, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (right to vote); Shapiro v. Thompson, *supra,* 394 U.S. at 634, 89 S.Ct. 1322 (right of interstate travel); or where the state statute, rule or policy creates a classification which is based upon criteria that are inherently "suspect" in a constitu-

---

2. There is no tuition for daytime classes and textbooks are provided without charge.

tional sense. *See* Graham v. Richardson, 403 U.S. 365, 372, 91 S.Ct. 1848, 29 L. Ed.2d 534 (1971) (alienage); McLaughlin v. Florida, 379 U.S. 184, 191–192, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (race); Oyama v. California, 332 U.S. 633, 644–646, 68 S.Ct. 269, 92 L.Ed. 249 (1948) (nationality).

█ Plaintiff first urges the Court to apply the "compelling state interest" test contending that defendants' policy deprives plaintiff of her fundamental right of equal educational opportunity. The Supreme Court has recently declared in San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), that education is not a fundamental right or liberty. Therefore, plaintiff's contention that defendants' policy deprives her of her fundamental right of equal educational opportunity is without merit.

█ Plaintiff further contends in urging the application of the "compelling state interest" test that defendants' policy deprives her of her fundamental right of procreation. There is no dispute that the right of procreation is among the rights of personal privacy protected under the Constitution. *See,* San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 34 n. 76, 93 S. Ct. 1278, 1297, 36 L.Ed.2d 16 (1973); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L. Ed.2d 551 (1972); Skinner v. Oklahoma, 316 U.S. 535, 541–542, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Where a person is exercising his fundamental right of procreation, any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a compelling governmental interest, is unconstitutional. *Cf.* Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L. Ed.2d 600 (1968). If defendants' policy served to penalize the exercise of plaintiff's fundamental right of procreation

there would be no question that defendants would have the burden of showing that the classification is necessary to promote a compelling state interest. *See,* Dunn v. Blumstein, *supra,* 405 U.S. at 342, 92 S.Ct. 995; Shapiro v. Thompson, *supra,* 394 U.S. at 634, 89 S.Ct. 1322. The Court finds, however, that defendants' policy of excluding plaintiff from regular daytime classes but permitting her to attend night school does not penalize the exercise of plaintiff's fundamental right of procreation. Therefore, plaintiff's contention is without merit.

█ The Court will now examine defendants' policy against the "rational basis" test. The policy in the instant case differentiates between students who are unmarried or not parents and students who marry or become parents. In order to survive constitutional attack, there must be at least some rational basis for the classification of students into different groups and the different treatment accorded each group. Defendants through the testimony of Dr. Carl G. Renfroe, superintendent of the Decatur City Schools, have offered only one reason for the justification of this policy. The reason proffered by the defendants is that students who marry or become parents are more precocious than other students and the mixing of these two groups of students will lead to the disruption of the school. Defendants have a duty to educate the students committed to their control. In order to succeed in this function defendants are permitted to regulate the conduct of the students. Such regulation is undeniably a legitimate state interest. Rules or policies promulgated by defendants which regulate student conduct will not be interfered with by the courts unless the rules or policies do not bear some relevance to the purpose of such policies which is to maintain discipline in the school. There is no dispute that students who marry or who become parents are normally more precocious than other students. Because of their precociousness, it is conceivable that their presence

in a regular daytime school could result in the disruption thereof.[3] Defendants' policy which excludes these students from regular daytime classes but provides an educational alternative is rationally connected to the legitimate state purpose of maintaining discipline in the school.[4] Therefore, the Court finds that defendants' policy has a rational basis and does not deny plaintiff the equal protection of the laws.

■ The Court's inquiry does not end with this determination. The record before the Court reveals that students who fall within the scope of defendants' policy are required to pay tuition and provide for their own textbooks, whereas, students who attend the regular day school are not so required. Indigent students such as plaintiff who fall within the scope of defendants' policy as a consequence of their indigency are precluded from attending school. Defendants have offered no justification for requiring those students who fall within the scope of the policy to pay tuition and to provide for their own textbooks. Therefore, the Court finds that defendants' policy, although fair on its face, denies plaintiff the equal protection of the laws as it is applied.

■ Plaintiff also attacks the validity of defendants' policy contending that the policy creates a conclusive presumption that a parent will disrupt the regular educational process and this presumption violates the due process clause of the Fourteenth Amendment. The Court finds that defendants' policy which in effect requires students who marry or become parents to attend a fully-accredited night school does not penalize the student nor does it deprive the student of any entitlement. Therefore, since the student is not penalized by the policy nor deprived of any entitlement, the policy does not violate the due process clause.

Accordingly, defendants are hereby permanently enjoined from requiring plaintiff, who falls within the scope of defendants' policy, to pay night school tuition and to provide for her own textbooks. Further, pursuant to 28 U.S.C. § 2201, defendants' policy is hereby declared unconstitutional as it is so applied.

Plaintiff's motion to amend the complaint is denied.

3. Plaintiff has offered no evidence to the contrary.

4. District Courts are not to impose upon defendants their views of what constitutes wise social policy. *Cf. Dandridge v. Williams, supra*, 397 U.S. at 471, 90 S.Ct. 1153.