JAMES, JUDICIAL ADMINISTRATOR, ET AL.
v. STRANGE

No. 71–11.   Argued March 22, 1972—Decided June 12, 1972

POWELL, J., delivered the opinion for a unanimous Court.

*Edward G. Collister, Jr.,* Assistant Attorney General of Kansas, argued the cause for appellants.   With him on the brief were *Vern Miller,* Attorney General, and *Matthew J. Dowd,* Assistant Attorney General.

*John E. Wilkinson* argued the cause and filed a brief for appellee.

*Marshall J. Hartman* filed a brief for the National Legal Aid and Defender Association as *amicus curiae.*

MR. JUSTICE POWELL delivered the opinion of the Court.

This case presents a constitutional challenge to a Kansas recoupment statute, whereby the State may recover in subsequent civil proceedings counsel and other legal defense fees expended for the benefit of indigent defendants.   The three-judge court below held the statute unconstitutional, finding it to be an impermissible burden upon the right to counsel established in *Gideon*

v. *Wainwright,* 372 U. S. 335 (1963).[1]   The State appealed and we noted jurisdiction, 404 U. S. 982.

The relevant facts are not disputed. Appellee Strange was arrested and charged with first-degree robbery under Kansas law. He appeared before a magistrate, professed indigency, and accepted appointed counsel under the Kansas Aid to Indigent Defendants Act.[2]   Appellee was then tried in the Shawnee County District. Court on the reduced charge of pocket picking. He pleaded guilty and received a suspended sentence and three years' probation.

Thereafter, appellee's counsel applied to the State for payment for his services and received $500 from the Aid to Indigent Defendants Fund. Pursuant to Kansas' recoupment statute, the Kansas Judicial Administrator requested appellee to reimburse the State within 60 days or a judgment for the $500 would be docketed against him. Appellee contends this procedure violates his constitutional rights.

## I

It is necessary at the outset to explain the terms and operation of the challenged statute.[3]   When the State

---

[1] The opinion of the three-judge court is reported in 323 F. Supp. 1230 (Kan. 1971).

[2] Kan. Stat. Ann. §§ 22–4501 to 22–4515 (Supp. 1971).

[3] Kan. Stat. Ann. § 22–4513 (Supp. 1971). The statute reads as follows:

"(a) Whenever any expenditure has been made from the aid to indigent defendants fund to provide counsel and other defense services to any defendant, as authorized by section 10, . . . such defendant shall be liable to the state of Kansas for a sum equal to such expenditure, and such sum may be recovered from the defendant by the state of Kansas for the benefit of the fund to aid indigent defendants. Within thirty (30) days after such expenditure, the judicial administrator shall send a notice by certified mail to the person on whose behalf such expenditure was made, which

provides an indigent defendant with counsel or other legal services, the defendant becomes obligated to the State for the amount expended in his behalf.  Within 30 days

notice shall state the amount of the expenditure and shall demand that the defendant pay said sum to the state of Kansas for the benefit of the fund to aid indigent defendants within sixty (60) days after receipt of such notice. The notice shall state that such sum became due on the date of the expenditure and that the sum demanded will bear interest at six percent (6%) per annum from the due date until paid.  Failure to receive any such notice shall not relieve the person to whom it is addressed from the payment of the sum claimed and any interest due thereon.

"Should the sum demanded remain unpaid at the expiration of sixty (60) days after mailing the notice, the judicial administrator shall certify an abstract of the total amount of the unpaid demand and interest thereon to the clerk of the district court of the county in which counsel was appointed or the expenditure authorized by the court, and such clerk shall enter the total amount thereof on his judgment docket and said total amount, together with the interest thereon at the rate of six percent (6%) per annum, from the date of the expenditure thereof until paid, shall become a judgment in the same manner and to the same extent as any other judgment under the code of civil procedure and shall become a lien on real estate from and after the time of filing thereof.  A transcript of said judgment may be filed in another county and become a lien upon real estate, located in such county, in the same manner as is provided in case of other judgments.  Execution, garnishment, or other proceedings in aid of execution may issue within the county, or to any other county, on said judgment in like manner as on judgments under the code of civil procedure.  None of the exemptions provided for in the code of civil procedure shall apply to any such judgment, but no such judgment shall be levied against a homestead.  If execution shall not be sued out within five (5) years from the date of the entry of any such judgment, or if five (5) years shall have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment shall become dormant and shall cease to operate as a lien on real estate of the judgment debtor. Such dormant judgment may be revived in like manner as dormant judgments under the code of civil procedure.

"(b) Whenever any expenditure has been made from the aid to indigent defendants fund to provide counsel and other defense.

of the expenditure, the defendant is notified of his debt
and given 60 days to repay it.[4] If the sum remains
unpaid after the 60-day period, a judgment is docketed
against defendant for the unpaid amount. Six per-
cent annual interest runs on the debt from the date
the expenditure was made. The debt becomes a lien
on the real estate of defendant and may be executed
by garnishment or in any other manner provided by
the Kansas Code of Civil Procedure. The indigent de-
fendant is not, however, accorded any of the exemp-
tions provided by that code for other judgment debtors
except the homestead exemption. If the judgment is
not executed within five years, it becomes dormant and
ceases to operate as a lien on the debtor's real estate,
but may be revived in the same manner as other dor-
mant judgments under the code of civil procedure.[5]

---

services to any defendant, as authorized by section 10, . . . a sum
equal to such expenditure may be recovered by the state of
Kansas for the benefit of the aid to indigent defendants fund from
any persons to whom the indigent defendant shall have transferred
any of his property without adequate monetary consideration after
the commission of the alleged crime, to the extent of the value of
such transfer, and such persons are hereby made liable to reimburse
the state of Kansas for such expenditures with interest at six per-
cent (6%) per annum. Any action to recover judgment for such
expenditures shall be prosecuted by the attorney general, who may
require the assistance of the county attorney of the county in which
the action is to be filed, and such action shall be governed by the
provisions of the code of civil procedure relating to actions for the
recovery of money. No action shall be brought against any person
under the provisions of this section to recover for sums expended
on behalf of an indigent defendant, unless such action shall have
been filed within two (2) years after the date of the expenditure
from the fund to aid indigent defendants."

[4] Failure to receive notice, however, does not relieve the person
to whom it is addressed of the obligation.

[5] A dormant judgment may be revived within two years of the
date on which the judgment became dormant. Kan. Stat. Ann.
§ 60–2404 (1964).

Several features of this procedure merit mention. The entire program is administered by the judicial administrator, a public official, but appointed counsel are private practitioners. The statute apparently leaves to administrative discretion whether, and under what circumstances, enforcement of the judgment will be sought. Recovered sums do, however, revert to the Aid to Indigent Defendants Fund.

The Kansas statute is but one of many state recoupment laws applicable to counsel fees and expenditures paid for indigent defendants.[6] The statutes vary widely in their terms. Under some statutes, the indigent's liability is to the county in which he is tried; in others to the State. Alabama and Indiana make assessment and recovery of an indigent's counsel fees discretionary with the court. Florida's recoupment law has no statute of limitations and the State is deemed to have a perpetual lien against the defendant's real and personal property and estate.[7] Idaho, on the other hand, has a five-year statute of limitations on the re-

---

[6] There is also a federal reimbursement provision, 18 U. S. C. § 3006A (f):

"Receipt of other payments.—Whenever the United States magistrate or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, to the bar association or legal aid agency or community defender organization which provided the appointed attorney, to any person or organization authorized pursuant to subsection (e) to render investigative, expert, or other services, or to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section. Except as so authorized or directed, no such person or organization may request or accept any payment or promise of payment for representing a defendant."

[7] The board of county commissioners has discretion to compromise or release the lien, however. Fla. Stat. Ann. § 27.56 (Supp. 1972–1973).

covery of an "indigent's" concealed assets at the time of trial and a three-year statute for the recovery of later acquired ones. In Virginia and West Virginia, the amount paid to court-appointed counsel is assessed only against convicted defendants as a part of costs, although the majority of state recoupment laws apply whether or not the defendant prevails. It is thus apparent that state recoupment laws and procedures differ significantly in their particulars.[8] Given the wide differences in the features of these statutes, any broadside pronouncement on their general validity would be inappropriate.

We turn therefore to the Kansas statute, aware that our reviewing function is a limited one. We do not inquire whether this statute is wise or desirable, or "whether it is based on assumptions scientifically substantiated." *Roth* v. *United States,* 354 U. S. 476, 501 (1957) (separate opinion of Harlan, J.). Misguided laws may nonetheless be constitutional. It has been noted both in the briefs and at argument that only $17,000 has been recovered under the statute in its almost two years of operation, and that this amount is negligible compared to the total expended.[9] Our task, however, is not to weigh this statute's effectiveness but its constitutionality.

---

[8] State recoupment statutes, including those quoted above, are as follows:

Ala. Code, Tit. 15, § 318 (12) (Supp. 1969); Alaska Stat. § 12.55.020 (1962); Fla. Stat. Ann. § 27.56 (Supp. 1972–1973); Idaho Code § 19–858 (Supp. 1971); Ind. Ann. Stat. § 9–3501 (Supp. 1970); Iowa Code Ann. § 775.5 (Supp. 1972); Md. Ann. Code, Art. 26, § 12C (Supp. 1971); N. M. Stat. Ann. § 41–22–7 (Supp. 1971); N. D. Cent. Code § 29–07–01.1 (Supp. 1971); Ohio Rev. Code Ann. § 2941.51 (Supp. 1971); S. C. Code Ann. § 17–283 (Supp. 1971); Tex. Code Crim. Proc., Art. 1018 (1966); Va. Code Ann. § 14.1–184 (Supp. 1971); W. Va. Code Ann. § 62–3–1 (Supp. 1971); Wis. Stat. Ann. § 256.66 (1971).

[9] For fiscal 1971 $400,000 was appropriated to fund the program.

Whether the returns under the statute justify the expense, time, and efforts of state officials is for the ongoing supervision of the legislative branch.

The court below invalidated this statute on the grounds that it "needlessly encourages indigents to do without counsel and consequently infringes on the right to counsel as explicated in Gideon v. Wainwright, supra." 323 F. Supp. 1230, 1233. In *Gideon,* counsel had been denied an indigent defendant charged with a felony because his was not a capital case. This Court often has voided state statutes and practices which denied to accused indigents the means to present effective defenses in courts of law. *Douglas* v. *California,* 372 U. S. 353 (1963); *Draper* v. *Washington,* 372 U. S. 487 (1963); *Lane* v. *Brown,* 372 U. S. 477 (1963); *Griffin* v. *Illinois,* 351 U. S. 12 (1956). Here, however, Kansas has enacted laws both to provide and compensate from public funds counsel for the indigent.[10] There is certainly no denial of the right to counsel in the strictest sense. Whether the statutory obligations for repayment impermissibly deter the exercise of this right is a question we need not reach, for we find the statute before us constitutionally infirm on other grounds.

## II

Appellants have asserted in argument before this Court that the statute "has attempted to treat them [indigent defendants] the same as would any civil judgment debtor be treated in the State courts . . . ."[11] Again, in their brief appellants assert that "[f]or all practical purposes the methods available for enforcement of the judgment are the same as those provided by the Code of Civil

---

[10] See n. 2, *supra.*

[11] Tr. of Oral Arg. 9. The State concedes that exemptions for other civil judgment debtors are broader than for indigent defendants, *id.,* at 10, a matter we will address forthwith.

Procedures [*sic*] or any other civil judgment."[12] The challenged portion of the statute thrice alludes to means of debt recovery prescribed by the Kansas Code of Civil Procedure.[13]

Yet the ostensibly equal treatment of indigent defendants with other civil judgment debtors recedes sharply as one examines the statute more closely. The statute stipulates that save for the homestead, "[n]one of the exemptions provided for in the code of civil procedure shall apply to any such judgment . . . ."[14] This provision strips from indigent defendants the array of protective exemptions Kansas has erected for other civil judgment debtors, including restrictions on the amount of disposable earnings subject to garnishment, protection of the debtor from wage garnishment at times of severe personal or family sickness, and exemption from attachment and execution on a debtor's personal clothing, books, and tools of trade. For the head of a family, the exemptions afforded other judgment debtors become more extensive, and cover furnishings, food, fuel, clothing, means of transportation, pension funds, and even a family burial plot or crypt.[15]

Of the above exemptions, none is more important to a debtor than the exemption of his wages from unrestricted garnishment. The debtor's wages are his sustenance, with which he supports himself and his family. The average low income wage earner spends nearly nine-tenths of those wages for items of immediate consumption.[16] This Court has recognized the potential of

[12] Brief for Appellants 7.

[13] See Kan. Stat. Ann. §§ 60–701 to 60–724; 60–2401 to 60–2419 (1964 and Supp. 1971).

[14] The exemptions in the civil code are set forth in Kan. Stat. Ann. §§ 60–2301 to 60–2311 (1964 and Supp. 1971).

[15] Kan. Stat. Ann. §§ 60–2304 and 60–2308 (1964 and Supp. 1971).

[16] Bureau of Labor Statistics, Handbook of Labor Statistics 281 (1968). Low-wage earners are defined as families with after-tax income of less than $5,000.

certain garnishment proceedings to "impose tremendous hardships on wage earners with families to support." *Sniadach* v. *Family Finance Corp.*, 395 U. S. 337, 340 (1969).[17] Kansas has likewise perceived the burden to a debtor and his family when wages may be subject to wholesale garnishment. Consequently, under its code of civil procedure, the maximum which can be garnished is the lesser of 25% of a debtor's weekly disposable earnings or the amount by which those earnings exceed 30 times the federal minimum hourly wage. No one creditor may issue more than one garnishment during any one month, and no employer may discharge an employee because his earnings have been garnished for a single indebtedness.[18] For Kansas to deny protections such as these to the once criminally accused is to risk denying him the means needed to keep himself and his family afloat.

The indigent's predicament under this statute comes into sharper focus when compared with that of one who has hired counsel in his defense. Should the latter prove unable to pay and a judgment be obtained against him, his obligation would become enforceable under the relevant provisions of the Kansas Code of Civil Proce-

---

[17] The Court in *Sniadach* held that Wisconsin's prejudgment wage garnishment procedure, as a taking of property without notice and prior hearing, violated the Due Process Clause of the Fourteenth Amendment.

[18] Kan. Stat. Ann. §§ 60–2310 (b) and 60–2311 (Supp. 1971). Section 60–2310 also provides further debtor protection from wage garnishment at a time of disabling personal sickness and from professional collecting agencies. See Kan. Stat. Ann. §§ 60–2310 (c) and (d) (Supp. 1971). See also Bennett, the 1970 Kansas Legislature in Review, 39 J. B. A. K. 107, 178 (1970), which points out that the State's restrictions on garnishments have been made to conform to Tit. III of the federal Consumer Credit Protection Act, 82 Stat. 163. Kansas, however, provided significant wage exemptions from garnishment long before the federal Act was passed.

dure. But, unlike the indigent under the recoupment statute, the code's exemptions would protect this judgment debtor.

It may be argued that an indigent accused, for whom the State has provided counsel, is in a different class with respect to collection of his indebtedness than a judgment creditor whose obligaticn arose from a private transaction. But other Kansas statutes providing for recoupment of public assistance to indigents do not include the severe provisions imposed on indigent defendants in this case. Kansas has enacted, as have many other States, laws for state recovery of public welfare assistance when paid to an ineligible recipient.[19] Yet

---

[19] Kan. Stat. Ann. § 39–719b (1964); § 59–2006 (Supp. 1971). Section 39–719b deals mainly with the recovery of assistance from an ineligible recipient. Yet, even when the welfare recipient is deemed to have defrauded the State, he still escapes the immediate interest accumulations and denial of exemptions imposed on indigent defendants:

"§ 39–719b. Duty of recipient to report changes; action by board; recovery of assistance obtained by ineligible recipient. If at any time during the continuance of assistance to any person, the recipient thereof becomes possessed of any property or income in excess of the amount ascertained at the time of granting assistance, it shall be the duty of the recipient to notify the county board of social welfare immediately of the receipt or possession of such property or income and said county board may, after investigation, cancel the assistance in accordance with the circumstances.

"Any assistance paid shall be recoverable by the county board as a debt due to the state and the county in proportion to the amount of the assistance paid by each, respectively: If during the life or on the death of any person receiving assistance, it is found that the recipient was possessed of income or property in excess of the amount reported or ascertained at the time of granting assistance, and if it be shown that such assistance was obtained by an ineligible recipient, the total amount of the assistance may be recovered by the state department of social welfare as a fourth class claim from the estate of the recipient or in an action brought against the recipient while living."

the Kansas welfare recipient, unlike the indigent defendant, is not denied the customary exemptions.[20]

We recognize, of course, that the State's claim to reimbursement may take precedence, under appropriate circumstances, over the claims of private creditors and that enforcement procedures with respect to judgments need not be identical.[21] This does not mean, however, that a State may impose unduly harsh or discriminatory terms merely because the obligation is to the public treasury rather than to a private creditor. The State

---

[20] There appears to be a further discrimination against the indigent defendant as contrasted with the delinquent welfare recipient. The recoupment statute applicable to indigent defendants provides for the accumulation of 6% annual interest from the date expenditures are made for counsel or other legal defense costs. Kan. Stat. Ann. § 22–4513 (Supp. 1971). The interest build-up for the indigent defendant would not be insubstantial. In the five years before the judgment became dormant, interest accumulations could lift appellee's $500 debt to almost $670. If the dormant judgment is revived within the statutorily prescribed two years, the principal and interest might total over $750. (The interest presumably would run while the judgment was dormant since "[a] dormant judgment may be revived and have the same force and effect as if it had not become dormant . . . ." Kan. Stat. Ann. § 60–2404 (Supp. 1971)).

Kansas also has a statute providing that all judgments shall bear 8% interest from the day on which they are rendered. Kan. Stat. Ann. § 16–204 (Supp. 1971) (recently amended from 6%). Presumably this statute would cover the "debts" of welfare recipients once they are reduced to judgment. The debt of the indigent defendant, however, runs from the date the assistance is granted, while any interest on the debt of a welfare recipient would presumably run from the date of judgment.

[21] For example, Kansas does not extend its exemptions with respect to wage garnishment to any debt due for any state or federal tax, Kan. Stat. Ann. § 60–2310 (e)(3) (Supp. 1971). This type of public debt, however, differs from the instant case in representing a wrongful withholding from the State of a tax on assets in the actual possession of the taxpayer and not, as here, a debt contracted under circumstances of indigency.

itself in the statute before us analogizes the judgment lien against the indigent defendant to other "judgments under the code of civil procedure." But the statute then strips the indigent defendant of the very exemptions designed primarily to benefit debtors of low and marginal incomes.

The Kansas statute provides for recoupment whether the indigent defendant is acquitted or found guilty. If acquitted, the indigent finds himself obligated to repay the State for a service the need for which resulted from the State's prosecution. It is difficult to see why such a defendant, adjudged to be innocent of the State's charge, should be denied basic exemptions accorded all other judgment debtors. The indigent defendant who is found guilty is uniquely disadvantaged in terms of the practical operation of the statute. A criminal conviction usually limits employment opportunities. This is especially true where a prison sentence has been served. It is in the interest of society and the State that such a defendant, upon satisfaction of the criminal penalties imposed, be afforded a reasonable opportunity of employment, rehabilitation and return to useful citizenship. There is limited incentive to seek legitimate employment when, after serving a sentence during which interest has accumulated on the indebtedness for legal services, the indigent knows that his wages will be garnished without the benefit of any of the customary exemptions.

Appellee in this case has now married, works for a modest wage, and has recently become a father. To deprive him of all protection for his wages and intimate personalty discourages the search for self-sufficiency which might make of the criminally accused a contributing citizen. Not only does this treatment not accord with the treatment of indigent recipients of public wel-

fare or with that of other civil judgment debtors,[22] but
the Kansas statute also appears to be alone among re-
coupment laws applicable to indigent defendants in
expressly denying them the benefit of basic debtor
exemptions.[23]

## III

In *Rinaldi* v. *Yeager,* 384 U. S. 305 (1966), the Court
considered a situation comparable in some respects to
the case at hand. *Rinaldi* involved a New Jersey statute
which required only those indigent defendants who were
sentenced to confinement in state institutions to reim-
burse the State the costs of a transcript on appeal. In
*Rinaldi,* as here, a broad ground of decision was urged,
namely, that the statute unduly burdened an indigent's
right to appeal. The Court found, however, a different
basis for decision; holding that "[t]o fasten a financial
burden only upon those unsuccessful appellants who are
confined in state institutions . . . is to make an invidious
discrimination" in violation of the Equal Protection
Clause. *Id.,* at 309.

*Rinaldi* affirmed that the Equal Protection Clause "im-
poses a requirement of some rationality in the nature of
the class singled out." *Id.,* at 308–309. This require-
ment is lacking where, as in the instant case, the State
has subjected indigent defendants to such discriminatory
conditions of repayment. This case, to be sure, differs
from *Rinaldi* in that here all indigent defendants are
treated alike. But to impose these harsh conditions on
a class of debtors who were provided counsel as required

---

[22] The statutes of various other States, *e. g.,* Alaska, South Caro-
lina, and West Virginia, provide, as does Kansas, for recovery against
indigent defendants in the same manner as on other judgments.
Unlike Kansas, however, these States do not expressly subject indi-
gents to conditions to which other civil judgment debtors are not
liable. See n. 8, *supra,* for citations.

[23] See n. 8, *supra,* for citations.

by the Constitution is to practice, no less than in *Rinaldi*, a discrimination which the Equal Protection Clause proscribes.

The Court assumed in *Rinaldi, arguendo,* "that a legislature could validly provide for replenishing a county treasury from the pockets of those who have directly benefited from county expenditures." *Id.,* at 309. We note here also that the state interests represented by recoupment laws may prove important ones. Recoupment proceedings may protect the State from fraudulent concealment of assets and false assertions of indigency. Many States, moreover, face expanding criminal dockets, and this Court has required appointed counsel for indigents in widening classes of cases [24] and stages of prosecution.[25] Such trends have heightened the burden on public revenues, and recoupment laws reflect legislative efforts to recover some of the added costs. Finally, federal dominance of the Nation's major revenue sources has encouraged state and local governments to seek new methods of conserving public funds, not only through the recoupment of indigents' counsel fees but of other forms of public assistance as well.

We thus recognize that state recoupment statutes may betoken legitimate state interests. But these interests are not thwarted by requiring more even treatment of indigent criminal defendants with other classes of debtors to whom the statute itself repeatedly makes reference. State recoupment laws, notwithstanding the state interests they may serve, need not blight in such discriminatory fashion the hopes of indigents for self-

---

[24] *Gideon* v. *Wainwright,* 372 U. S. 335 (1963); *Douglas* v. *California,* 372 U. S. 353 (1963); *Argersinger* v. *Hamlin, ante,* p. 25.

[25] *Coleman* v. *Alabama,* 399 U. S. 1 (1970); *Mempa* v. *Rhay,* 389 U. S. 128 (1967); *United States* v. *Wade,* 388 U. S. 218 (1967); *Miranda* v. *Arizona,* 384 U. S. 436 (1966).

sufficiency and self-respect. The statute before us embodies elements of punitiveness and discrimination which violate the rights of citizens to equal treatment under the law.

The judgment of the court below is affirmed.