Steven Leland OLSON,
Plaintiff-Appellant,

v.

James R. JAMES, Judicial Administrator,
Defendant-Appellee.

Iley SIMMONS, Plaintiff-Appellee,

v.

James R. JAMES, Judicial Administrator,
and State of Kansas,
Defendants-Appellants.

Nos. 78–1706, 79–1430.

United States Court of Appeals,
Tenth Circuit.

Argued July 16, 1979.

Decided Aug. 6, 1979.

Richard C. Wallace, Gen. Counsel, Wyandotte County Legal Aid Society of Kansas Legal Services, Kansas City, Kan., for appellant Olson and appellee Simmons.

Janet A. Chubb, Asst. Atty. Gen., Topeka, Kan. (Robert T. Stephan, Atty. Gen., Topeka, Kan., on the brief), for defendants-appellants.

Before HOLLOWAY, BREITENSTEIN and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The case before us is actually two cases which, although tried separately, have been, because of identical issues, consolidated for appeal. Each was a class action seeking declaratory and injunctive relief pursuant to United States civil rights statute 42 U.S.C. § 1983. In both cases attack is leveled against a Kansas statute, Kan.Stat. Ann. § 22–4513 (Supp.1978). The first of these cases is *Olson v. James,* No. 78–1706. In it Judge O'Connor, United States District Judge for the District of Kansas, held that the allegedly invalid Kansas statute was not unconstitutional.[1] On the other

1. There Judge O'Connor heard and determined the case on motion for summary judgment. The grounds urged before Judge O'Connor were (1) that the recoupment law had been declared unconstitutional by the Supreme Court (in *James v. Strange,* 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972)), (2) that the statute discriminated against indigent defend-

ants in that it chilled one's right to appeal adverse state court decisions, and (3) that it resulted in cruel and unusual punishment.

Judge O'Connor noted that the exemptions contention dealt with in *Strange* was no longer viable inasmuch as the Kansas legislature had adopted a provision that "The exemptions pro-

hand, in a subsequent case, *Simmons v. James,* No. 79–1430, Judge Richard Rogers of the United States District Court for the District of Kansas found and determined that the Kansas statute was unconstitutional. *Simmons v. James,* 467 F.Supp. 1068 (D.Kan.1979).

## THE EMBATTLED STATUTE

The statute, Kan.Stat.Ann. § 22–4513 (Supp.1978), provides for liability of a defendant in a criminal case for expenditures for attorney's fees furnished by the state. It provides that whenever an expenditure is made from a defendant's fund to provide counsel and other defense services to a defendant, such defendant shall be liable to the State of Kansas for a sum equal to such expenditure, and such sum may be recovered from the defendant by the State of Kansas for the benefit of the fund to aid indigent defendants. It further calls for immediate enforcement. It declares:

> Within thirty (30) days after such expenditure, the judicial administrator shall send a notice by certified mail to the person on whose behalf such expenditure

was made, which notice shall state the amount of the expenditure and shall demand that the defendant pay said sum to the state of Kansas for the benefit of the fund to aid indigent defendants within sixty (60) days after receipt of such notice.

The statutory provision goes on to provide for the contents of the notice for interest from the due date until paid. It also declares that failure to receive the notice does not relieve the person from the payment of the sum claimed together with interest. The statute also specifies in detail the procedure to be taken in order to enforce this provision.[2] Failure to pay the sum in question results in the clerk of the district entering judgment without further hearing in the amount of the fee plus six percent per annum from the due date until paid. An execution based upon this judgment together with garnishment then issues.

The attack centers on the alleged violation of the Sixth and Fourteenth Amendments to the United States Constitution. Judge Rogers, in an opinion rendered March 30, 1979, granted summary judgment invali-

---

vided for in the code of civil procedure shall apply to any such judgment."

As to the chilling effect on the right to appeal, Judge O'Connor said that this had been rejected in *Fuller v. Oregon,* 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), which held that the indigent defendant there was adequately protected. Judge O'Connor held further that the indigent defendant should be no more deterred from exercising constitutional rights than the marginally solvent defendant who must bear the expense of a private attorney. The judge further reasoned that since "Olson was provided the means to adjudicate a motion to vacate and faced no greater obstacle than nonindigent defendants seeking review by state post-conviction remedies," [his rights were not violated].

2. It provides:

Should the sum demanded remain unpaid at the expiration of sixty (60) days after mailing the notice, the judicial administrator shall certify an abstract of the total amount of the unpaid demand and interest thereon to the clerk of the district court of the county in which counsel was appointed or the expenditure authorized by the court, and such clerk shall enter the total amount thereof on his or her judgment docket and said total amount, together with the interest thereon at the rate

of six percent (6%) per annum, from the date of the expenditure thereof until paid, shall become a judgment in the same manner and to the same extent as any other judgment under the code of civil procedure and shall become a lien on real estate from and after the time of filing thereof. A transcript of said judgment may be filed in another county and become a lien upon real estate, located in such county, in the same manner as is provided in case of other judgments. Execution, garnishment, or other proceedings in aid of execution may issue within the county, or to any other county, on said judgment in like manner as on judgments under the code of civil procedure. The exemptions provided for in the code of civil procedure shall apply to any such judgment. If execution shall not be sued out within five (5) years from the date of the entry of any such judgment, or if five (5) years shall have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment shall become dormant and shall cease to operate as a lien on real estate of the judgment debtor. Such dormant judgment may be revived in like manner as dormant judgments under the code of civil procedure.

dating the statute after both parties had filed and had thus submitted motions. The judge considered the statute to be overbroad and unnecessarily chilling to the defendant's right to counsel. One reason which was prominent in his opinion was that the judgment against the person for whom counsel was provided was mandatory and automatic and did not take into account that some of the defendants would remain indigent during the the five-year tenure during which the judgment could be enforced. Judge Rogers considered this deficiency in the statute to be entirely lacking in value and unnecessary. The judge also gave effect to the idea that the statute would cause many indigent defendants to forego the exercise of this constitutional right. He pointed out that this view was consistent with the earlier decision of a three-judge court in *Strange v. James*, 323 F.Supp. 1230, 1234 (D.Kan.1971). The judge concluded that the failure of the statute to take into account the poverty of the accused and the automatic entry of judgment required by the statute serve to chill the underlying right. By failing to exempt the persons unable to pay, the statute was, according to the further reasoning of Judge Rogers, in conflict with the Supreme Court's decision in *James v. Strange*, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972).

Finally, it was the inflexibility of the Kansas statute and its lack of concern for the facts applicable to the individual defendants which convinced the district court that it was invalid. The other contentions were disregarded as not necessary to a decision.

## DUE PROCESS AND EQUAL PROTECTION

The due process argument was (and is) predicated on the concept that the statute compels the state to proceed automatically to recoup the expenditure and on its application to all involved defendants without regard to the outcome of the trial or the individual's financial condition. Also, the judgment is entered without any hearing or any procedure involving the accused.

Counsel for Simmons emphasize that the action is not against recoupment statutes generally, but, rather, it opposes the rigid, demanding automatic procedure, and the allegedly irrational requirements of the Kansas enactment. Counsel seeks to show that the Supreme Court (in *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974)), in upholding Oregon's recoupment provision, has pointed to it as a model enactment, which offers dramatic contrast when compared to the grudging, demanding and discriminatory provisions found in the Kansas recoupment statute which counsel says impedes and turns away the assertion of Sixth Amendment rights. This effect is the product, so it is further argued, of the automatic and demanding terms that are found in the Kansas statute. Counsel refers to its failure to make any distinction between indigent defendants, its failure to consider the financial condition, present and future, of individual defendants and its failure to take into account ultimate guilt or innocence.

## *JAMES v. STRANGE* AND EQUAL PROTECTION

The issue is therefore whether the Kansas statute which was found to be unconstitutional in the Supreme Court's 1972 decision in *James v. Strange, supra,* and which was repaired somewhat, continues to be contrary to the Supreme Court's pronouncements and thus suffers from failure to give full effect to the fundamental right to counsel.

In the Supreme Court's definitive decision, *James v. Strange, supra,* the majority opinion of Justice Powell held that the fact that the statute was arguably discouraging to indigent defendants did not condemn it since it did not expressly and in the strictest sense deny the right to counsel. Further, it was said by the majority opinion that whether the statutory obligation for repayment impermissibly deterred the exercise of the right to counsel did not need to be reached because the Court found that there were more obvious deficiencies such as the

failure to give the criminal defendant the right to exercise exemptions, which rights including the right to unrestricted garnishment were extended to all other debtors. A further shortcoming pointed to was the demand made by the statute for recoupment regardless of the indigency of the defendant or regardless of whether he was acquitted or found guilty. It was pointed out that there was no rational basis for recouping attorney's fees where the defendant was acquitted since the state had brought on the prosecution.

But, it was the failure of the statute to protect the wages and the intimate personal property of the defendant from seizure and its consequent discouraging of independence and self-sufficiency with its natural impeding of rehabilitation that brought the Court to the conclusion that the provisions constituted a violation of the equal protection clause.

*Rinaldi v. Yeager*, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966), had previously ruled that it was not permissible to require an indigent defendant to reimburse the state for the cost of a transcript on appeal. Such a provision was held to have fastened a financial burden only on the unsuccessful appellants who were confined in state institutions. For this reason it lacked rationality which the equal protection clause required. Also, the Court considered that the rationality was lacking in the provision subjecting indigent defendants to discriminatory terms of repayment. In essence then the Court held that indigent defendants were entitled to evenhanded treatment in relationship to other classes of debtors.

## THE OREGON STATUTE AND THE *FULLER* DECISION

The subsequent decision of the Supreme Court in *Fuller v. Oregon, supra,* considered a statute which the Court regarded as basically reasonable in that it did not require defendants who at the time of the proceedings were indigent to pay, but it made provision for their repaying only after they had subsequently acquired financial means. Persons who presented at the time of the proceedings no likelihood of being able to pay were not even conditionally obligated to pay, and the obligated ones were not subjected to collection proceedings until their indigency had ended.

Justice Stewart, writing for the Supreme Court in an opinion which was concurred in by Chief Justice Burger and Justices White, Blackmun, Powell and Rehnquist, upheld the statute. The Court's opinion took note of the fact that the statute satisfied *James v. Strange* in that it did not withhold debtor exemptions from the defendant and it distinguished between those convicted and those acquitted. Quite properly, the latter were not required to pay. The Court's conclusion was that the Oregon recoupment system did not deprive a defendant of legal assistance and did not violate the spirit of the Constitution which it recognized as providing that an indigent defendant has a right to free counsel when he needs it. The fact that he might some day be required to pay the costs was not regarded as a factor which detracted from the right which it conferred to obtain counsel. The obligation of the accused to pay did not after all come into being while he remained indigent nor during circumstances where the payment would constitute hardship. Thus, it was its nonoppressiveness and hence its basic reasonableness which convinced the Court that the Oregon law was valid.

The fact that it gave full recognition to the right to counsel by providing reasonable standards for recoupment was an added reason. Oregon's system, the Supreme Court said, "for providing counsel quite clearly does not deprive any defendant of the legal assistance necessary to meet these needs." The fact that he might some day be required to repay the state "in no way affects his eligibility to obtain counsel." Thus, the Court recognized an important requisite to be that it extends only to those who become capable of repaying the state.

It is to be inferred then that such a statute must not indiscriminately pursue the indigent as well as those who have acquired the means of repaying. Also, it was said that "a defendant in a criminal

case who is just above the line separating the indigent from the nonindigent" and who "must borrow money, sell off his meager assets or call upon his family or friends in order to hire a lawyer must suffer." On this opinion states: "We cannot say that the Constitution requires that those only slightly poorer must remain forever immune from any obligation to shoulder the expenses of their legal defense, even when they are able to pay without hardship."

## CONCLUSORY COMMENTS

There are some general guides relevant to the case before us which are to be gleaned from the Supreme Court's decisions in *James v. Strange* and *Fuller v. Oregon*. These are:

■ First, a requirement of repayment is to be imposed only upon a convicted (not an acquitted) defendant or one whose conviction is reversed on appeal.

■ Second, a court should not order a convicted person to pay these expenses unless he is able to pay them or will be able to pay them in the future considering his financial resources and the nature of the burden that payment will impose. If a person is unlikely to be able to pay, no requirement to pay is to be imposed.

■ Third, a convicted person on whom an obligation to repay has been imposed ought at any time be able to petition the sentencing court for remission of the payment of costs or any unpaid portion thereof. The court should have the power to issue remittitur if payment will impose manifest hardship on the defendant or his immediate family.

■ Fourth, if the convicted person shows that his default was not attributable to an intentional refusal to obey the order of the court or to a failure on his part to make a good faith effort to make the payment, he ought not be held in contempt.

The Court's favorable comments on the Oregon statute in denying exemptions from execution afforded to other judgment creditors is one noteworthy, approved principle.

The statute's nondiscrimination between those convicted and those acquitted was given approval and, of course, the approval of the special procedures applicable to persons who were indigent and who did not show any signs of acquiring the ability to pay. Thus, the decision points up the necessity for inquiring into present and future financial resources of the criminal defendant.

■ The general tenor of the Kansas recoupment statute plus its drastic terms is certain to impress a criminal defendant with the immediacy of its effect on him, for certainly it dispels all doubts as to whether he is to be held responsible for payment. He also knows beyond question that his guilt or innocence or his indigency or nonindigency does not matter.

We need not speculate as to whether the statute produces a chilling effect. We need only take notice of its awesome and forbidding character to realize that it emphasizes collection first and foremost. Its fulfillment of the defendant's right to counsel is much less than a primary purpose. A further deficiency is its lack of proceedings which would determine the financial condition of the accused and perhaps test the excessiveness of the attorney's fee (and these fees are not modest). All of these factors combine to produce the conclusion that the statute is in violation of the Fourteenth Amendment of the Constitution of the United States.

Accordingly, we conclude that the judgment of the district court in *Olson v. James* must be reversed. The judgment of the district court in *Simmons v. James* should be and the same is hereby affirmed. Each cause is remanded to the respective district courts for further proceedings consistent with the views expressed herein.