THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PATRICK ANDREW KELLEHER, Defendant-Appellant.

Fourth District   Nos. 4—82—0644, 4—82—0689 cons.

Opinion filed July 21, 1983.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, and Patrick A. Kelleher, of Bloomington, *pro se*, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Robert J. Biderman and Thomas W. Lacy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On September 29, 1982, following a bench trial in the circuit court of Livingston County, defendant, Patrick A. Kelleher, was acquitted of two charges of forgery. On October 4, 1982, following a hearing on the State's petition to recover attorney fees, the court ordered defendant to pay $440 to reimburse the county for his appointed counsel's services. A portion of the cash bail bond posted by defendant was to be retained to pay those fees. Defendant then made a disparaging remark to the court, and the court found him to be in direct criminal contempt. He was sentenced to and served one day in jail. Defendant appeals the recoupment order, the contempt finding, and the sentence. We affirm all orders appealed.

Under scrutiny is section 113—3.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 113—3.1). It authorizes the trial court to require defendants in criminal proceedings, who have been appointed counsel in the trial court or a court of review because of their indigency, to pay "a reasonable sum" to reimburse the county for some or all of costs incurred in furnishing the counsel. Defendant maintains that section 113—3.1 violates due process, because (1) it applies to those acquitted as well as those convicted, and (2) it permits the court to require that money deposited for bail be applied to reimburse the county even though no warning is given to a defendant making bail that this may occur. Defendant also asserts that the court abused its discretion in this case by requiring that defendant's bail deposit be used to reimburse Livingston County.

We consider first defendant's claim that the application of the statute to acquitted as well as convicted defendants works a deprecation of due process. Statutes requiring reimbursement to the State from defendants who have been furnished counsel by the State with-

out charge have been before the United States Supreme Court in *Fuller v. Oregon* (1974), 417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116, and *James v. Strange* (1972), 407 U.S. 128, 32 L. Ed. 2d 600, 92 S. Ct. 2027. Neither is directly on point here.

In *Fuller*, the court upheld a State statute permitting recoupment against convicted, but not acquitted, defendants and allowing the recoupment to be a condition of probation. The legislation granted those defendants required to make reimbursement all of the exemptions applicable to other debtors and conditioned any requirement for reimbursement upon a defendant's ability to pay. The court examined the statute on equal protection and right-to-counsel grounds. The court concluded that there was a rational basis for applying recoupment to those convicted but not to those acquitted. It also decided that because of the exemptions provided and the requirement that defendants be able to pay, there was no improper discrimination between rich and poor. A contention raised below that there was improper discrimination because an indigent may be imprisoned for his failure to pay attorney's expense while a nonindigent who failed to pay his attorney would not, was not preserved for review by the United States Supreme Court. That court also held that the statute did not "chill" a defendant's exercise of his right to appointed counsel if indigent, because the statute required him to pay only that which he could pay.

In *James*, the court overturned a Kansas recoupment statute which was applicable to indigents regardless of whether they were convicted or acquitted. It permitted entry of judgment for expense of counsel without a hearing and allowed no exemptions except homestead. The court reasoned that equal protection was denied, stating:

> "If acquitted, the indigent finds himself obligated to repay the State for a service the need for which resulted from the State's prosecution. It is difficult to see why such a defendant, adjudged to be innocent of the State's charge, should be denied basic exemptions accorded all other judgment debtors." 407 U.S. 128, 139, 32 L. Ed. 2d 600, 609, 92 S. Ct. 2027, 2033.

Subsequent to *James* and *Fuller* in *Olson v. James* (10th Cir. 1979), 603 F.2d 150, a slightly altered form of the Kansas recoupment statute was considered. The statute granted normal exemptions to defendants but continued to provide for the entry of an automatic judgment against the defendant regardless of indigency. In holding the statute to be still violative of the fourteenth amendment, the *Olson* court concluded that recoupment of expenses of counsel from those acquitted was one reason for the statute's infirmity. The court stated that *James* had held that there "was no rational basis for re-

couping attorney's fees where the defendant was acquitted since the state had brought on the prosecution." 603 F.2d 150, 154.

We do not agree with the *Olson* court's interpretation of *James*. The only language in that opinion which the *Olson* court could have been relying on was that which we previously cited. In the context of the two quoted sentences, it is apparent that the court was saying that, at least in those cases where an indigent was prosecuted by the State but acquitted, the indigent should be entitled to the same exemptions as other debtors.

Section 113—3.1 of the Code of Criminal Procedure of 1963 requires that reimbursement must be in a reasonable sum and recognizes that reason may require that only partial recoupment be ordered. By its terms, it is geared to the defendant's ability to pay. As with the Oregon statute in *Fuller*, it is "tailored to impose an obligation only upon those with a foreseeable ability to meet it, and to enforce that obligation only against those who actually become able to meet it without hardship." (*Fuller v. Oregon* (1974), 417 U.S. 40, 54, 40 L. Ed. 2d 642, 655, 94 S. Ct. 2116, 2125.) As in *Fuller*, it does not tend to unduly deter an indigent defendant in the proper exercise of his right to court appointed counsel if indigent.

While *Fuller* finds a rational basis for distinguishing between those convicted and those acquitted, the rational basis does not require the distinction. A nonindigent, although acquitted, is ordinarily required, without reimbursement by the State, to pay for counsel. To require an indigent, although acquitted, to reimburse the county, to the extent he is able, for the expense of furnished counsel, tends to put indigents and nonindigents who are acquitted, on the same basis and is consistent with due process.

Defendant also argues that since costs in the trial court can only be assessed against a convicted defendant (Ill. Rev. Stat. 1981, ch. 38, par. 180—3), section 113—3.1 should be similarly limited. However, in *Schilb v. Kuebel* (1971), 404 U.S. 357, 30 L. Ed. 2d 502, 92 S. Ct. 479, the provision of section 110—7(f) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1963, ch. 38, par. 110—7(f)) authorizing the clerk of the court to retain 10% of the bail deposit as a fee regardless of whether the defendant was convicted was upheld as an administrative expense properly imposed under those circumstances rather than a cost of prosecution which could only be taxed upon conviction. As we have indicated, if the expense of counsel for an accused was considered to be a cost of prosecution, which one acquitted should not have to bear, logic would require that a nonindigent who was acquitted would be entitled to reimbursement from the State for expenses of

obtaining counsel. The provision permitting assessment of costs only against those convicted does not require a similar rule in regard to recoupment under section 113—3.1.

Defendant's second contention is that section 113—3.1 denies due process, because it does not require that notice be given to an accused at the time of depositing bail that portions of his deposit may be awarded to the county as reimbursement for expenses of providing a court appointed lawyer for the accused. Although defendant may have waived this issue by failure to raise it in the trial court, we elect to consider the matter. Defendant correctly states that due process guarantees that one not be deprived of property without a hearing and notice. He cites *Fuentes v. Shevin* (1972), 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983. However, *Fuentes* requires a notice and hearing before the actual appropriation of property takes place. Section 113—3.1 satisfies the requirements of *Fuentes* as it directs that a hearing be held before the court orders appropriation of the property by authorizing recoupment. Notice to a defendant of such a hearing would be inherently required. However, defendant's concern is not satisfied by such a hearing and notice. Rather, he maintains that he should have been advised of the possible consequences before the deposit of bail was made.

Neither section 113—3.1 nor article 110 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 113—3.1, art. 110), dealing with bail, have any requirement that an accused making bail be given any notice or advice as to what may be done with the bail deposit. In addition to the provisions of section 113—3.1 for recoupment for expenses of providing an attorney, section 110—7(i) provides that 90% of the cash deposit may be applied to a fine or costs assessed in case of a conviction. We are aware of no decision holding that provision void for lack of a statutory requirement for notice to an accused at the time of making bail that 90% of the deposit may be ordered to be applied to fine and costs.

In *People v. Castile* (1981), 87 Ill. 2d 73, 429 N.E.2d 495, the court held that section 110—7(i) authorized the appellate court to apply the 90% of the bail deposit in that court to payment of both trial and appellate court costs. In adopting that interpretation of section 110—7(i), the court noted that neither party would gain substantially if an interpretation were made which would require the State to obtain execution and levy upon the deposit in order to obtain costs. Here, the statute could merely have provided for the county to have obtained a judgment for recoupment. Had the statute so provided, clearly there would be no requirement that the accused be given no-

tice by the clerk, before accepting bail, that the deposit might be levied on if a judgment was obtained. Here, as with section 110—7(i), allowing direct application rather than requiring levy to obtain the funds is not of great disadvantage to the accused. The only disadvantage to the accused in providing for a direct charge upon the 90% of the deposit is that the accused might occasionally be able to withdraw the money before the levy is made. The priorities in the right of creditors of the accused present a more significant problem.

We deem it highly desirable that (1) indigents seeking court appointed counsel be advised of the provisions of section 113—3.1 providing for recoupment at the time court appointed counsel is furnished, and (2) written bail bond agreements contain a condition that the 90% portion of the bail deposit may be applied by the court pursuant to section 113—3.1. The bail bond agreement here set forth that the 90% might be applied to fine and costs pursuant to section 110—7(i). However, we do not find the statutory provisions involved here to be invalid for the failure to provide for such notice, nor do we find the procedure used here to be erroneous for that reason.

The recoupment provisions of section 113—3.1 meet constitutional muster.

Defendant's assertion that the court abused its discretion in ordering $440 of defendant's bail deposit to be applied to reimbursement of the county is based upon evidence that the deposit was made with money which defendant had borrowed, and that defendant had no assets of substance. Defendant does not contend that the evidence was insufficient to show that the county incurred expense of at least $440 in providing counsel for defendant. The State countered with testimony of witnesses who saw defendant at various times during the summer of 1982 with large sums of cash in his possession. Defendant testified that he was entrusted with this money by others who gave it to him for the purpose of having him make investments for them. The trial court was not required to believe defendant's vague explanation and could have concluded that defendant had sufficient assets to pay $440 of the costs of providing counsel for him. The trial court's determination was neither contrary to the manifest weight of the evidence nor a breach of discretion.

At the conclusion of the recoupment hearing, the defendant, who appeared *pro se* at the hearing, requested that his bail deposit be returned to him, and that he be permitted to repay the 10% of the deposit to the clerk periodically. When the court ruled against him, defendant stated, "I wonder how much of that you are getting." The court stated that the defendant was "indicating that the court is get-

ting some of the money from the attorney fees" assessed. The defendant denied that was what he meant. The court refused to accept the denial and pointed out that the words used by the defendant were clear. The court found the defendant in direct criminal contempt and sentenced him to one day of incarceration.

■■ A general definition of acts which constitute direct contempt of court are those which are " 'calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute.' " (*People v. Miller* (1972), 51 Ill. 2d 76, 78, 281 N.E.2d 292, 293.) In the case of *In re Little* (1972), 404 U.S. 553, 30 L. Ed. 2d 708, 92 S. Ct. 659, the United States Supreme Court held that a statement by a *pro se* defendant that the court was biased and had made a prejudgment of the case could not constitute contempt. The statement of criticism was isolated and not made in a loud or boisterous manner. In *People v. Hanna* (1976), 37 Ill. App. 3d 98, 99, 345 N.E.2d 179, 180, a defendant told a trial judge, in open court, that the court had " 'messed up so much already it's pathetic.' " As the statement appeared to be an isolated one and was not made in a loud voice or boisterous manner, we held that it could not be the basis for a direct criminal contempt conviction. (See also *People v. Wilson* (1975), 35 Ill. App. 3d 86, 341 N.E.2d 34; *People v. Pearson* (1968), 98 Ill. App. 2d 203, 240 N.E.2d 337.) In the above cases the alleged contemnor merely criticized the job that the court was doing.

■■ Here, defendant's statement accused the judge of crime. Such a statement is much less likely than mere criticism to be encompassed within an exercise of a defendant's or a lawyer's right to fully explain the defendant's position in a case. Such a statement is much more likely to hinder or obstruct the court and to derogate its authority. Accordingly, we deem the effrontery to the court occurring from defendant's statement to be sufficient to support the contempt finding.

Our affirmance is for the reasons stated.

Affirmed.

TRAPP and MILLER, JJ., concur.