UNITED STATES of America, Plaintiff,

v.

Dimitri W. THOMAS, Defendant.

Crim. No. 84–20563.

United States District Court,
E.D. Michigan, S.D.

March 6, 1986.

Michael J. Lavoie, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Kenneth Sasse, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, Chief Judge.

On November 4, 1985, Dimitri Thomas was convicted by a jury of conspiracy to misapply bank funds and of aiding and abetting the misapplication of bank funds, all in violation of federal law. The defendant has been represented by court-appointed counsel in this matter, who has submitted a claim for services and expenses arising out of this representation for an amount of $6,500.93. Before the court is the government's motion to order the defendant to compensate the government for the cost of court-appointed counsel.

This issue is controlled by the federal recoupment statute, which provides in pertinent part:

Whenever the United States magistrate or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, to the bar association or legal aid agency which provided the appointed attorney, to any person or organization authorized pursuant to subsection (e) to tender investigative, expert, or other services, or to the court for deposit in the Treasury as a reimbursement....

18 U.S.C. § 3006A(f). The statute does not contain any procedural guidelines, so its

application has been a matter of judicial construction.[1]

■ The weight of authority is that the burden of proof in these proceedings rests with the defendant. *United States v. Harris*, 707 F.2d 652, 660 (2d Cir.1983). The court must hold a hearing to determine if the defendant is financially able to repay the goevernment for legal services. However, this need not be a formal adversarial hearing:

> In the usual case, the district judge need not permit a full-fledged adversarial inquiry into the nature and amount of a defendant's assets; nor need he [sic] become involved in determining priorities to those assets. We hold only that any defenses to payment by a defendant ... should be fully considered.

*United States v. Bracewell*, 569 F.2d 1194, 1200 (2d Cir.1978). The court must, however, conduct a wide-ranging inquiry into the defendant's financial status.

> Before a finding of "availability" can properly be made, the district judge should be satisfied that, in ordering reimbursement in any specified amount, the defendant will not suffer extreme hardship as a consequence of being deprived of his funds. In every case, the needs of the defendant himself must be considered.... Additionally, the court should be sensitive to the defendant's responsibilities to his family.

*Bracewell*, 569 F.2d at 1199. The standard the court must apply is not "indigency," but rather whether the defendant is financially able to secure adequate representation. *Harris*, 707 F.2d at 660.

■ This court has conducted a limited evidentiary hearing in which the defendant's accountant testified as to the value of the defendant's property holdings.[2] The accountant testified that the value of all the property held by the defendant and his family, including the family home, is $198,-428.00.[3] His home, fully paid for, has a market value of close to $50,000. Turning to the defendant's income property, he currently is selling two parcels under a land contract, the monthly payments to the defendant totalling $1,126.00.[4] The accountant testified that the 14 parcels of income property owned by the defendant have a potential rental income of slightly over

---

1. As the recoupment statute is being applied to a defendant who has been convicted, there is no doubt as to its constitutional validity. *See, e.g., James v. Strange*, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1971); *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1973); *Olson v. James*, 603 F.2d 150 (10th Cir.1979); *Fitch v. Belshaw*, 581 F.Supp. 273 (D.Or.1984); *United States v. Pinckney*, 491 F.Supp. 82 (D.Mo.1980); *Opinion of the Justices*, 121 N.H. 531, 431 A.2d 144 (1981); *People v. Kelleher*, 116 Ill.App.3d 186, 72 Ill.Dec. 211, 452 N.E.2d 143 (1983).

2. While there was testimony at trial that various pieces of property were transferred from the defendant's name to that of his wife, or alternatively to a trust for his children, no such testimony was forthcoming at the evidentiary hearing. The accountant did testify that while it appeared that attempts were made to transfer some properties, these attempts generally did not meet the appropriate legal standards. Even if such transfers had been successful, the defendant could not claim indigency by putting his assets into his relatives' names. *United States v. Rubinson*, 543 F.2d 951, 964 (2d Cir. 1976), *cert. denied*, 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124; *Ybarra v. Wolff*, 571 F.Supp. 209 (D.Nev.1983).

3. It was not clear from the testimony whether the $198,000 figure represented the State Equalized Value (SEV) of the property or its market value. Under Michigan law, the SEV generally reflects approximately one half of the market value of the property. For example, the defendant's home has an SEV of $24,900, but its market value is estimated at just under $50,000. Due to factors such as the location and condition of the property, variations between assessors, and the uncertainties indemic to market estimates, this court cannot estimate the overall market value of the defendant's property based upon the record as it stands. However, neither is the court prepared to accept the SEV figure as reflecting the real value of the properties. This confusion as to the market value of the defendant's property is not critical to the court's decision, as the defendant's assets are substantial even if the SEV figure was only equivalent to the market value.

4. The original sales price was $95,000, with the value of the land contract now at $87,000. A monthly payment of $826.00 a month is now being withheld on the advice of the purchaser's lawyer due to a cloud on the title.

$37,000.[5] Taking into account the annual property taxes (but not taking debt service into account), it was estimated that the defendant's properties generated a net income of approximately twelve to thirteen thousand dollars a year.

There was also extensive testimony on the liabilities of the defendant. Since 1982, he has not paid property taxes on his various parcels, leaving an outstanding tax liability of over $36,000. Many of these properties are either in the process of being sold by the state for back taxes, or will be soon. His debt service currently totals approximately $20,000 a year. The United States government also has a claim of over $170,000 against the defendant for unpaid back taxes, plus penalties and interest.

It is clear from the testimony that the defendant owns property with a value of over $200,000 (see note 3, supra). He is also receiving substantial income from the sale of two parcels and rental payments from others. Much of the defendant's financial problems, including the withholding of land contract and rental payments, are of his own making due to his failure to pay taxes for several years. A rental payment of $18,000 a year is being withheld because the tenant is dissatisfied with the condition of the building. The $173,000 claimed by the United States government also arises out of the defendant's own conduct: the failure to pay his taxes.

The defendant is arguing, in effect, that the government should bear the cost of his legal representation because for several years he did not pay either his property or income taxes, and over-extended himself in his business dealings. The claims of creditors do not take priority over the claims of the government for repayment of costs of representation. *United States v. Coniam*, 574 F.Supp. 615, 618 (D.Conn.1983). Nor can the court ignore the magnitude of the defendant's assets in light of the modest amount in fees at issue in this motion. Further, the court notes that the defend-

ant's family home is completely paid for, indicating that this court's order will not endanger the well being of the defendant or his family. The court finds that the minimum needs of the defendant and the family are not compromised by requiring him to reimburse the government for the costs of his representation, and that he is financially able to make such a payment.

Accordingly, the defendant is hereby ordered to tender to the court within 90 days $6,500.93, or such amount as may be subsequently approved by the Chief Judge of the Court of Appeals for the Sixth Circuit, for deposit in the Treasury as reimbursement for the cost of defendant's appointed counsel, in accordance with 18 U.S.C. § 3006A(f).

IT IS SO ORDERED.

---

**5.** Approximately $23,000 a month of this rental income is now being withheld because of disputes between the defendant and his tenants over the condition of the property, leaving only four parcels currently generating income.